[Civ. No. 14587. Second Dist., Div. Two. Nov. 28, 1944.]

C. J. GRIFFIN et al., Respondents, v. HERBERT C. NORTHRIDGE et al., Appellants.

Michael F. Shannon and Thomas A. Wood for Appellants.

R. M. Trezevant and Helen Lee MacKellar for Respondents.

MOORE, P. J.—The question for decision is whether the facts established justify the finding of a nuisance on adjacent premises and the consequent award of damages.

In the fall of 1940 plaintiffs purchased a lot on Oporto Drive in a hillside district. The area was restricted exclusively to residential structures with minimum building requirements of $10,000. The lot had dimensions of 109 feet frontage and a depth of 100 feet. At the time plaintiffs acquired their building site defendants had already erected their home on the adjoining lot. In February, 1941, plaintiffs commenced their structure which was completed in October, 1941. At the time of its completion plaintiffs had an unobstructed view of the neighboring hills, the territory which formerly comprised the suburban town of Hollywood and vast stretches of the metropolitan area. Both lots had a long descent at the rear, but there was no alley or other means of access from the street below. Both houses were built according to a plan which placed the kitchen and service quarters to the side. Each house was approximately the same distance from the common property line.

Immediately following plaintiffs' occupancy of their home defendants commenced a course of exhibiting malice toward plaintiffs by both words and deeds. Mrs. Northridge trespassed upon flower beds of plaintiffs, ground her heel into the flowers and removed plaintiffs' only blooming hibiscus plant from a flower pot. Defendants removed their garbage can from the place originally constructed for it on the east side of the Northridge home and placed it on the west side, against the property line and almost directly under plaintiffs' dining room window. They raised a line along the common boundary to which they tied many tin can tops which by their constant clanging caused plaintiffs to be annoyed in the daytime and to be kept awake at night. They wilfully caused paint to be cast upon the walls and windows of plaintiffs' home. To add insult to injury, at many times and on divers occasions Mrs. Northridge approached the common property line and called to Mrs. Griffin that she was a "tin-pan-alley queen," "cheap people," "dirty people," "a sloppy wench," "a sloppy huzzy," "an alley cat," and by directing to her such statements as "There you go you old sloppy wench with your trash"; "Why don't you do something about your figure?" "Why don't you spend a little of your dirty money to have your car washed?" Also, at times, while the Griffins were entertaining friends she advanced to plaintiffs' windows, screamed that plaintiffs' guests had parked their cars in front of defendants' property and demanded their removal. Along

and by the common property line defendants planted eucalyptus trees which grew to some 18 feet in height. They obstructed the eastward view from plaintiffs' home, deprived plaintiffs of light and air, and sent their roots beneath the soil of the Griffin lot and imperiled the foundations of plaintiffs' residence. During the period of plaintiffs' occupancy of their property defendants maintained a wall adjacent to the common property line with huge dirt and concrete foundations with an ugly, hideous board fence upon it, which obstructed the sun, light, ventilation and view for portions of the Griffin home and which wall so excluded sunlight from the plants on the east side of the Griffin lot as to cause them to die. And to crown their deeds with a shocking display of ill-will they exposed the fangs of their malice by dissuading a buyer from completing her acquisition of plaintiffs' home after she had deposited $1,000 on the purchase price. These acts of defendants were done with malice and with intent to harm and injure plaintiffs in the peaceful occupancy of their home. Plaintiffs declared that the alleged acts constituted a nuisance and demanded the abatement thereof with damages. But prior to trial they sold their home and submitted only their prayer for damages which were assessed in the sum of $1,000 without comment as to what portion of the award was by way of punishment.

In their brief defendants have attempted to minimize the significance of each of their several acts with a view of demonstrating that by reason thereof no damage could have been suffered by plaintiffs. They assert that there is no sufficient evidentiary support for any one of the acts found to constitute a nuisance. They argue, in effect, that the only approach to a declaration of a nuisance is the maintenance of the wall and its exclusion of view, air and sunshine, but that they have a right to erect any kind of fence not prohibited by law; that plaintiffs have no easement for view, light and air across defendants' property (citing *Western Granite & Marble Co.* v. *Knickerbocker,* 103 Cal. 111 [37 P. 192] ; *Ingwersen* v. *Barry,* 118 Cal. 342 [50 P. 536] ; *Kennedy* v. *Burnap,* 120 Cal. 488 [52 P. 843, 40 L.R.A. 476]) and consequently have no legal complaint unless the structure violates the spite-fence law (Deering's Gen. Laws, Act 2532, Stats. 1913, p. 342) which inhibits a fence in excess of ten feet in height.

We are not impressed by claim that the evidence is insufficient to support the several findings. While it may be

true that no one finding alone would justify the judgment for $1,000 yet the sum total of all of defendants' behavior abundantly warrants such decision. That the acts were done by defendants in person makes them even more culpable, more dreadful and repulsive than if robots had acted. The financial value of the trespasses committed, of plants or flowers destroyed, of walls and windows marred by paint, of peace and quiet disturbed, of cruel epithets spoken, of unsightly walls that precluded view and darkened the home, of the spreading roots of the eucalypti—the detriment caused by any one of these factors measured by its money value alone is of little importance in appraising the sum total of them all as a nuisance to those who occupy the adjoining home. The old proverb that a man's home is his castle embodies a rich heritage of truth. All things in it or about it are as fine gold to them that dwell there. It is their palace to their friends, their refuge from toil and unkind foes. There they commune with the thoughts of the wise and virtuous, thrill under the spell of music, enjoy laughter and love. He who maliciously aims and attempts to destroy the peace and recreative value of a home robs its inmates of immeasurable riches and does an inestimable damage.

But because financial recompense is an inadequate exchange for the deprivation of home comforts it is no good reason for denying pecuniary award for the damage sustained thereby. In deriving a determination of the extent of the detriment suffered in such event the court may consider the sentimental and aesthetic values of things destroyed, the owner's affection for his possessions, as well as his peace, comfort and quiet which have been scorned by his neighbor. *(Judson v. Los Angeles Suburban Gas Co.,* 157 Cal. 168 [106 P. 581, 21 Ann. Cas. 1247, 26 L.R.A.N.S. 183].) The owner of a residence occupied as a home is entitled to just compensation for annoyance, discomfort and inconvenience caused by a nuisance on the adjoining property. *(Green v. General Petroleum Corp.,* 205 Cal. 328, 333, 337 [270 P. 952, 60 A.L.R. 475] ; *Dauberman v. Grant,* 198 Cal. 586 [246 P. 319, 48 A.L.R. 1244] ; 39 Am. Jur., p. 398.) While the Green judgment was for eviction and other special damages resulting from oil and mud blown onto their home from an oil well near by, without negligence, and the Dauberman judgment was for the inconvenience suffered from smoke and rain waters from Grant's adjoining property, yet we see no reason why such acts as those

of defendants would not be a nuisance to the occupants of a home as much as smoke, water and oil. Especially is this true where the acts complained of were activated by sheer malice.

There was substantial evidence of each fact found by the court. Mr. Griffin saw Mrs. Northridge trample and ruin his flower beds on two occasions. Mrs. Griffin saw the lady "tramping over our young geraniums." The witness Marian Campbell saw Mrs. Northridge take an hibiscus bloom and a spray of jasmine from plaintiffs' yard. Also, she observed that the malodorous garbage can of defendants was taken from the place constructed for it and placed in close proximity to the dining room windows of the Griffins. Plaintiffs witnessed defendants, while painting their walls, sling paint onto plaintiffs' house. Both Mr. and Mrs. Griffin testified to the epithets applied to Mrs. Griffin by Mrs. Northridge. The findings that Mrs. Northridge cried out to plaintiffs to wash their automobile; that on numerous occasions they called that plaintiffs' guests had parked their cars in front of defendants' lot, were supported by the testimony of plaintiffs and by that of Mrs. Du Plesis who saw Mrs. Northridge come to the window and demand to know what "cheap people" had parked their vehicles in front of defendants' property and declared she was "very tired of such cheap neighbors and cheap trash parked in front of her place." While there is no testimony that the roots of eucalyptus trees had undermined the foundations of plaintiffs' residence the court was warranted in taking judicial notice that the roots of the eucalypti extend great distances and will by growth soon alter the adjacent walks and driveways and later the foundations of the residence. That Mrs. Bruel, the purchaser, was induced by declarations of Mrs. Northridge to breach her contract for the purchase of the Griffin home after depositing $1,000 was established by the testimony of Mr. Turney, the broker, and of Mrs. Bruel. To that lady Mrs. Northridge declared: "I am going to block that house if I can"; and to Mr. Turney, Mr. Northridge said: "Wait until you hear what I am going to do; I am taking that [fence] down to make it four feet higher."

That action would not have lain against defendants for inducing the breach as contended by defendants (citing *In Re Lyons*, 27 Cal.App.2d 293, 297 [81 P.2d 190]) is of no great moment here. *Arguendo*, it might be conceded that the Lyons case states the law, although it is not in accord with the deci-

sions of *Remillard-Dandini Co.* v. *Dandini,* 46 Cal.App.2d 678 [116 P.2d 641], and *Elsbach* v. *Mulligan,* 58 Cal.App.2d 354 [136 P.2d 651], yet there is no indication that defendants inquired, or stopped to consider, whether plaintiffs had an enforceable contract of sale. Their malice and their zeal to annoy and discomfort plaintiffs by fair means or foul was evidenced on every available occasion.

The board fence mounted on the retaining wall along the east line of plaintiffs' lot darkened their home and excluded their eastern view of the city and prevented designed ventilation. Judging by the behavior of defendants in other respects the trial court must have been impressed that the fence was not constructed to serve the comfort of defendants but only to annoy and grieve plaintiffs. At the trial it was contended, as here, that a board fence is not a nuisance *per se* and it will not be abated unless it unnecessarily exceeds ten feet in height. (Deering's Gen. Laws, Act 2532; Stats. 1913, p. 342.) While the testimony was closely conflicting upon the height of the rough board fence, the court's finding was made after the judge's inspection of the premises. Such inspection constituted independent evidence and provided support for the finding. *(Gibson Properties Co.* v. *City of Oakland,* 12 Cal.2d 291 [83 P.2d 942].) Even though the fence had not been ten feet in height still it was a nuisance if it was constructed with malicious intent, interfered with plaintiffs' full enjoyment of their home and if its usefulness to defendants was "subordinate and incidental." (See *Haehlen* v. *Wilson,* 11 Cal.App.2d 437 [54 P.2d 62]. While the Haehlen judgment abating a six-foot fence was reversed, it is implied that the reason for the reversal was because no malice was shown.)

That the acts of defendants created a nuisance is established by the proof that the acts committed were of such a nature as to harass and annoy plaintiffs continuously and to interfere with their comfortable enjoyment of life and of their home. (Civ. Code, § 3479; *Los Angeles Brick & Clay Products Co.* v. *City of Los Angeles,* 60 Cal.App.2d 478 [141 P.2d 46].) If the contention were established that defendants did no unlawful acts and therefore created no nuisance, the maintenance of a comfortable home in a city would be imperiled by the presence of a neighbor who would wilfully frustrate the peace and comfort of another without just cause. Where peo-

ple attempt to dwell side by side in urban life, where their interests are common if not intertwined, the liberties we might unrestrictedly enjoy on a forty-acre farm must be foregone if the metropolitan areas are to succeed in the development of wholesome culture and in the extension of civilization. While we take pride in the towering structures that adorn a city, its parks, its paved boulevards and its utilities, these marks of grandeur and facilities are as naught if homes are rendered untenantable by those who on adjacent properties delight in their display of malice and hatred for a fellow man.

█ The judgment is not excessive. █ For the personal discomfort and annoyance to which a person has been subjected by a nuisance on adjoining property, the determination of the amount of his compensation is a question for the trial court. *(Dauberman* v. *Grant, supra,* p. 590.) █ It is not necessary that compensation for a nuisance should be denied because it is not continuous. █ Neither should a plaintiff be denied recovery because he is deprived of only a part of his property, comfort or life. *(Judson* v. *Los Angeles Suburban Gas Co., supra,* p. 172.) A judgment will not be disturbed so long as it is supported by any substantial evidence. *(Bellman* v. *San Francisco H. S. District,* 11 Cal.2d 576, 581 [81 P.2d 894].) █ A single intentional trespass on the rights of another justifies an award of punitive damages against the wrongdoer. If the act is maliciously done the damages may be enhanced to such extent as will afford complete redress. (20 R.C.L., p. 471.)

Judgment affirmed.

Wood (W. J.), J., and McComb, J., concurred.