[Civ. No. 779. Fifth Dist. July 17, 1968.]

ROBERT E. HUTCHERSON et al., Plaintiffs, Cross-defendants and Respondents, v. D. OWEN ALEXANDER, Defendant, Cross-complainant and Appellant.

Neiman & Sieroty and Allen I. Neiman for Defendant, Cross-complainant and Appellant.

Robert P. Stringham for Plaintiffs, Cross-defendants and Respondents.

GARGANO, J.—This action for injunctive relief and damages is between feuding business competitors who own adjoining business properties. It was brought by the plaintiffs, but

defendant filed a cross-complaint also seeking injunctive relief and damages. After a two-day trial the trial court entered judgment enjoining both parties and their employees from parking vehicles or placing signs or structures in the setback area fronting the respective business properties. The court also ordered defendant to remove a so-called ''menu board'' from a 6-foot fence and enjoined defendant from obstructing the area above the fence in any manner. The court, however, retained jurisdiction to fix plaintiffs' damages, both compensatory and punitive.

Each party is engaged in the business of dispensing food, drinks, gas and similar products to customers who travel along U. S. Highway 99 in Tulare County. Each has ''drive-in'' facilities, a gas station and a fruit stand located between the main highway and a frontage road. Because of the layout persons traveling north on Highway 99 first see plaintiffs' establishment; then, when the travelers turn off the highway to the north of both establishments and proceed south, they first see defendant's establishment.

The parties began business operations within one week of each other, and before long they began annoying one another. Thus, the record, as is often the case in an action of this nature, is replete with evidence of petty bickering and ungentlemanly conduct. However, to avoid repetition we shall discuss the evidence when we separately consider defendant's several contentions for reversal of the judgment. These contentions are substantially as follows.

I. The court erred when it ordered defendant to remove the so-called ''menu board'' from defendant's 6-foot fence and permanently enjoined defendant from obstructing the area above the fence in any manner.

II. The judgment permanently enjoining the use of the setback area is contrary to both the law and the evidence.

III. The judgment relating to damages is contrary to law.

IV. The court's denial of the injunctive relief requested by defendant in his cross-complaint was erroneous.

I

On July 9, 1963, shortly after the parties commenced to do business, defendant erected a 6-foot fence on the dividing line of their adjoining properties. Subsequently defendant extended the fence to a height of 15 feet, 6 inches. He then painted advertising on the extension and called it a ''menu board.'' Defendant listed his food items but not the prices.

The court, however, determined the main purpose for the erection of the so-called ''menu board'' was to annoy the plaintiffs and therefore ordered it removed. Specifically, the court found defendant maliciously and unnecessarily erected the ''menu board'' to hide plaintiffs' premises from the view from the frontage road, a public street.

Defendant contends that the court used at least four different legal theories in arriving at its judgment, viz., the structure interfered with defendant's easement of view, it violated the spite fence law, it constituted a nuisance, and it constituted unfair competition. Defendant then extensively argues the validity of each theory. Succinctly, he asserts: it is the settled decisional law of this state that there is no easement in view in California; the spite fence law was misapplied since it does not prohibit structures up to 10 feet above the ground; the ''menu board'' could not properly be classified as a nuisance because it was constructed for a lawful purpose; and the doctrine of unfair competition has no application in a case of this nature.

■ It is the general rule that the unreasonable, unwarrantable or unlawful use by a person of his own property so as to interfere with the rights of others is a nuisance (66 C.J.S., Nuisances, § 1, p. 727). In fact, any unwarranted activity which causes substantial injury to the property of another or obstructs its reasonable use and enjoyment is a nuisance which may be abated. And, even a lawful use of one's property may constitute a nuisance if it is part of a general scheme to annoy a neighbor and if the main purpose of the use is to prevent the neighbor from reasonable enjoyment of his own property (*Griffin* v. *Northridge*, 67 Cal.App. 2d 69 [153 P.2d 800]). Thus, we do not find it necessary to discuss all of the theories which the trial court may have considered when it arrived at its judgment. ■ On the contrary, we conclude that there was ample evidence to justify the court's order requiring defendant to remove the ''menu board'' on the ground that it constituted a nuisance.

First, there was substantial evidence for the court to find that the so-called ''menu board'' was not necessary or essential to defendant's business and defendant's business motive was secondary or incidental. Defendant's customers were required to get out of their cars and walk to the kitchen to place their orders as defendant did not provide car service. And, significantly, defendant had menu boards hung on his kitchen building. Moreover, the trial judge determined that

the "menu board" was not necessary to defendant's business after he viewed defendant's premises. ■■ It is settled that a view of the scene by the trial judge is independent evidence on which a finding may be made and sustained (*Otey* v. *Carmel Sanitary Dist.*, 219 Cal. 310, 312 [26 P.2d 308]; Evid. Code, § 140).

■■ Second, there was substantial evidence for the court to find that defendant maliciously placed the "menu board" on the fence to annoy the plaintiffs. Defendant had operated a similar business at another location. Yet appellant did not have a comparable menu board at that location. Furthermore, when defendant first erected the "menu board," the solid portion began at a height of 10 feet above the ground, extending upward to a height of 15 feet, 6 inches, leaving a middle gap of approximately 4 feet which still allowed some view of plaintiffs' premises. However, defendant then covered this gap with bamboo curtains and almost completely blocked the view of plaintiffs' premises. Later defendant permanently filled the gap so that the structure became a solid wall.

Third, there was substantial evidence for the court to find that the erection of the "menu board" was part of defendant's general scheme (and only one of his many activities) to annoy plaintiffs and to interfere with plaintiffs' reasonable use and enjoyment of their property. Shortly after the completion of the drive-in restaurants, defendant told plaintiffs that since plaintiffs would not purchase defendant's business he would do things to plaintiff Hutcherson "that he wouldn't do to a dirty dog." Defendant also told others that he was going to eliminate plaintiffs as a competitor. Defendant then embarked on a course of conduct which included the following activities. He drove his car out to the frontage road and blocked oncoming traffic from going into plaintiffs' business. He erected a produce stand in a position to block the view of plaintiffs' premises from the frontage road. He hired young toughs to chase off the plaintiffs' hired little boy who was passing out free refreshment tickets. He parked a truck on plaintiffs' right of way and painted white arrows on the frontage road pavement directing people to his establishment. He intimidated plaintiffs' employees.

Defendant vigorously argues the use of his fence for a "menu board," at least up to a height of 10 feet, was a lawful use of the premises and hence could not be enjoined by the trial court. However, a similar argument was rejected in

*Griffin* v. *Northridge, supra,* 67 Cal.App.2d 69. In that case the court at page 75 of the opinion stated:

"The board fence mounted on the retaining wall along the east line of plaintiffs lot darkened their home and excluded their eastern view of the city and prevented designed ventilation. *Judging by the behavior of defendants in other respects the trial court must have been impressed that the fence was not constructed to serve the comfort of defendants but only to annoy and grieve plaintiffs.* At the trial it was contended as here, that a board fence is not a nuisance *per se* and it will not be abated unless it unnecessarily exceeds ten feet in height. (Deering's Gen. Laws, Act 2532; Stats. 1913, p. 342.) While the testimony was closely conflicting upon the height of the rough board fence, the court's finding was made after the judge's inspection of the premises. Such inspection constituted independent evidence and provided support for the finding. (*Gibson Properties Co.* v. *City of Oakland,* 12 Cal.2d 291 [83 P.2d 942].) Even though the fence had not been ten feet in height still it was a nuisance if it was constructed with malicious intent, interfered with plaintiffs' full enjoyment of their home and if its usefulness to defendants was 'subordinate and incidental.' (See *Haehlen* v. *Wilson,* 11 Cal.App.2d 437 [54 P.2d 62]." (Italics added.)

## II

Defendant does not challenge the validity of the Tulare County ordinance which establishes a building setback area for defendant's property. ■ A county may establish setback areas and similar regulations in the interest of sound community planning and to allow for future growth. Defendant, however, asserts that the trial court's order enjoining both parties "from parking automobiles, trucks, trailers and vehicles of any kind or placing signs or other structures, portable or otherwise, in the building line setback area" is erroneous since it enjoins both lawful and unlawful use of their setback area. Specifically, he maintains that the injunction, put in terms of the ordinance, nevertheless exceeds the scope of the county ordinance because the ordinance applies only to fixed structures and not to vehicles or movables such as signs or skids.

Defendant's argument that the Tulare County setback ordinance applies only to permanent structures is persuasive. ■ However, as we have stated, even a lawful use of property is a nuisance and may be enjoined if the real purpose is to annoy someone else and to obstruct the reasonable

use and enjoyment of his property. And when plaintiffs' evidence relating to defendant's use of the setback area is considered in light of defendant's previously related conduct, it is clear there was sufficient evidence for the court to find that defendant's use of the setback was just another facet of defendant's overall scheme to annoy plaintiffs and to interfere with the reasonable enjoyment of their property.

According to plaintiffs' evidence, defendant parked trucks and cars in the setback area to block the view of respondents' premises. He also placed an "exit only" sign 4 feet high and 8 feet wide in the setback area to mislead customers into believing that nothing was south of that sign. And on one occasion he even put a sign saying "main entrance" on a pickup truck and parked the truck in the setback area for approximately three months. This sign was designed to cause prospective customers traveling south on the frontage road to believe that the entrance into defendant's business was the only entrance into any business.

 We conclude, however, the court's injunction is worded far too broadly. The Tulare County setback ordinance, by its own terms, applies only to permanent structures and was enacted to guard against insurmountable acquisition costs to the county and in the acquisition of future rights of way which would obviously result from the erection of permanent structures in area clearly needed to accommodate future growth and orderly community development.[1] Thus, the injunction as worded prohibits lawful uses of the setback

---

[1] Section 7500 of the Tulare County Ordinance Code provides in pertinent part as follows: "In order to conserve the public interest and to assure economies and protect the public safety and welfare, it is imperative that necessary rights of way for streets and highways within the County be protected against encroachment by permanent physical improvenemts the existence of which would make unnecessarily difficult or impractical the retention or creation of thoroughfares adequate in alignment, dimensions and vision clearance to serve the public needs, safety and welfare. In order to deal effectively with the practical problem thus presented, it is necessary for the County to establish certain minimum building line setbacks on a County-wide basis."

Section 7501 of the Tulare County Ordinance Code provides in pertinent part as follows: "It shall be unlawful to erect buildings of any kind or to erect any structure including, but not limited to, derricks, windmills, silos, motion picture screens, advertising structures or solid walls, or to construct a well for water, oil or other hydrocarbon products, or to make excavations or install a subsurface structure of any kind within the building line setbacks established by this Article. Such prohibition shall not apply to trees, agricultural crops, open fences, or to public utilities installed under authority of law, nor shall it apply to any building, structure, well, excavation or subsurface structure existing on July 1, 1949."

area by the defendant even if such uses are not intended to, and do not in fact, unnecessarily interfere with the reasonable enjoyment of plaintiffs' property. Therefore, the injunction must be modified to enjoin only those uses which are unlawful, or lawful but nevertheless primarily designed to annoy plaintiffs and to obstruct plaintiffs' reasonable use of their premises.

### III

At the conclusion of the trial, the trial court found the plaintiffs had suffered business losses, but the amount of the losses could not be ascertained with reasonable certainty and hence were speculative. Plaintiffs had scarcely commenced to operate their business when the trouble began, and the court apparently felt there was insufficient business information available to determine the extent of plaintiffs' business losses with precision. Thus, the court retained jurisdiction to fix plaintiffs' damages at a later date after the nuisance had been abated and plaintiffs had the opportunity to operate their business for a period of time without defendant's interference.

It is of course true that a court of equity may, under certain circumstances, retain jurisdiction over the parties to the action in order to make certain that its orders and injunctions are obeyed (*Murphy* v. *Bucke's Dept. Store,* 199 Cal. 194 [248 P. 668]). And, manifestly, in bifurcated cases the court retains jurisdiction, after the liability issue has been resolved, to fix the damages or for accounting and similar purposes. However, no statute or decision has been cited and none has been found which authorizes a judgment of the character rendered, i.e., which would authorize a court to abate a nuisance which is injurious to the plaintiffs' business, as in the instant case, and then to defer judgment on the issue of past damages to a later date in order to consider evidence accumulated after the nuisance has been abated. If anything, the authorities are to the contrary.[2]

The difficulty here originally arose because plaintiffs were engaged in a new business venture when defendant erected

---

[2]It is the prevailing rule in this country that, if plaintiff seeks in one equitable action to both abate a nuisance and recover damages, he may recover damages to the time of trial, but no cases have been found which have allowed the trial court to defer the issue of past damages in order to give the plaintiff a second chance to prove those past damages according to profits made in entirely new and different circumstances. (39 Am.Jur., Nuisances, § 174; Civ. Code, § 3283; *Keys* v. *Romley,* 64 Cal.2d 396, 411 [50 Cal.Rptr. 273, 412 P.2d 529]; but compare actions at law: *Hopkins*

the so-called "menu board" on his 6-foot fence and engaged in the other obnoxious activities to which we have referred. Consequently, the court's desire to give the plaintiffs the opportunity to prove their business losses is understandable. However, be this as it may, the trial court's findings of fact on this issue are ambiguous and the judgment which was ultimately entered thereon is erroneous.[3]

　█　Had the trial judge decided that he could only speculate whether or not the defendant's actions caused plaintiffs any damages, then a finding of damages would clearly have been erroneous (*Continental Car-Na-Var Corp.* v. *Moseley,* 24 Cal.2d 104, 113 [148 P.2d 9]).　█　However, here the judge determined defendant's conduct caused plaintiffs some damages. Thus, if the trial judge merely believed the evidence was speculative in the sense that he could not calculate the damages with certainty, he should have nevertheless resorted to the best evidence available and fixed damages accordingly (*Ojala* v. *Bohlin,* 178 Cal.App.2d 292 [2 Cal.Rptr. 919]). It is the rule that one whose wrongful conduct has rendered the determination of damages uncertain cannot thereby escape liability (*Xum Speegle, Inc.* v. *Fields,* 216 Cal.App.2d 546, 556 [31 Cal.Rptr. 104]). On the other hand, if the trial judge believed the evidence was completely speculative so that the amount of damages fixed would be entirely conjectural, he should have at least allowed plaintiffs nominal damages (Civ. Code, § 3360).

Thus, in no event should the court have deferred the issue of past damages to a later date in order to give plaintiffs a second chance to prove their damages according to profits made in entirely new and different circumstances. In fact, the trial judge could not possibly determine plaintiffs' business losses by resorting to business data accumulated after the "menu board" had been removed without engaging in sheer speculation. Plaintiffs' business profits or losses are dependent primarily on customer patronage, and any increases in

---

v. *Western Pac. R.R. Co.,* 50 Cal. 190; *Bigley* v. *Nunan,* 53 Cal. 403; *Ford* v. *Santa Cruz R.R. Co.,* 59 Cal. 290; and *Williams* v. *Southern Pac. R.R. Co.,* 150 Cal. 624 [89 P. 599].

[3]In Finding of Fact No. 8 the court stated:

"8. Plaintiffs suffered damages by way of loss of business and profits by reason of defendant's conduct and the erection and maintenance of said 14 foot high structure during the period from July 3, 1963, until the time of trial, but the exact amount of such loss of profits and business cannot now be ascertained with certainty and would be speculative at the present time."

plaintiffs' customer patronage which may occur during the one-year period following the removal of the "menu board" and the cessation of defendant's other injurious conduct could conceivably result from numerous other imponderable factors such as economic conditions, increased highway use, changes in business policies and effective management.

We do not, however, agree with defendant's suggestion that defendant is entitled to judgment on the issue of damages.[4] As we have stated, plaintiffs are at least entitled to nominal damages. They are also entitled to a decision on the issue of punitive damages; when the facts warrant, exemplary or punitive damages may be recovered in a nuisance case. (*Griffin* v. *Northridge,* 67 Cal.App.2d 69, 76 [153 P.2d 800]; *McIvor* v. *Mercer-Fraser Co.,* 76 Cal.App.2d 247, 254 [172 P.2d 758]). Moreover, defendant has not yet removed the "menu board;" the removal of the board was deferred pending disposition of this appeal. Thus, it is possible (and even probable) that additional ascertainable damages have since accumulated. No supplemental pleading is required to obtain damages to the date of trial in an equitable action (*Collins* v. *Sargent,* 89 Cal.App. 107, 112 [264 P. 776]; *Kazanteno* v. *Cal-Western etc. Ins. Co.,* 137 Cal.App.2d 361, 376-377 [290 P.2d 332]).

## IV

Defendant's contention that the court erred when it denied defendant the injunctive relief requested in his cross-complaint is a mere quarrel with the court's finding of fact and without substantial merit.[5] And since there is substantial evidence to support this finding, we cannot disturb the court's judgment on appeal.

The judgment is reversed insofar as it absolutely prohibits the parties from parking vehicles or placing signs or other structures, portable or otherwise, in the building line setback

---

[4]Defendant relies on the court's statement in its minute order to the effect that there had been a failure of proof of the amount of damages. However, a court's antecedent statements, minute orders or memoranda cannot be used to impeach the court's findings (*Halagan* v. *Ohanesian,* 257 Cal.App.2d 14, 21 [64 Cal.Rptr. 792]). In any event, the court's statement simply adds to the confusion in the court's findings.

[5]In Finding of Fact No. 6 the court stated:

"6. The allegations of Paragraph III of the Second Cause of Action of defendant, D. Owen Alexander's Cross-Complaint are not true, except it is true that plaintiffs parked vehicles and placed signs in the setback area fronting their business on some occasions, and committed some of the other specific acts alleged in said paragraph, but it is also true that plaintiffs' conduct in this regard was defensive in nature and was justifiably provoked by defendant, D. Owen Alexander."

area, and insofar as it purports to postpone the damages determination. In all other respects the judgment is affirmed. The cause is · therefore remanded to the trial court with instructions (1) to modify its injunction enjoining the parties "from parking automobiles, trucks, trailers and vehicles of any kind or placing signs or other structures, portable or otherwise in the building line setback area" to conform with the views expressed in this opinion and, accordingly, to enjoin only such activities and uses (including the parking of automobiles, trucks, trailers and vehicles and the erection or placing of structures, portable or otherwise, by either party, their agents or employees) in the setback area not otherwise prohibited by the setback ordinance, which the court has found, on the basis of the evidence previously presented, or may find, on the basis of additional evidence as may be presented by the parties, are primarily and intentionally designed to interfere with access rights, view of the premises or any other reasonable use or enjoyment of the parties' respective premises; and (2) to determine and fix plaintiffs' damages, both punitive and compensatory, in accordance with the views herein expressed and on the basis of evidence previously presented and such additional evidence as may be presented by the parties. Each party to pay own costs on appeal.

Conley, P. J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 11, 1968.