[Civ. No. 42148. Second Dist., Div. One. May 23, 1974.]

ROBERT ZIMMER, as Executor, etc., et al.,
Plaintiffs and Respondents, v.
CHRISTINE E. WOLFRANK DYKSTRA, Defendant and Appellant.

**COUNSEL**

Leonard Sacks for Defendant and Appellant.

Joseph A. Lazaroni and Henry W. Low for Plaintiffs and Respondents.

**OPINION**

**HANSON, J.**—This case involves a dispute between real property owners residing in a residential area over the use of a portion of a nondedicated alleyway at the rear of their properties.

### THE FACTS

The real property at issue is located in what is known as "Reilly's Spring Tract" in the Highland Park area of the City of Los Angeles. The parties to this action, as reflected in the sketch, *infra* (see Appendix, p. 440), reside in the city block bordered by Longfellow Street to the north, Avenue 55 to the east, Avenue 54 to the west and Glen Ellen Place to the south. Plaintiffs-

respondents Edward Zimmer[1] (hereinafter Zimmer) and Louis E. McAfee and Lukena McAfee, husband and wife (hereinafter for the sake of brevity will be referred to in the singular, McAfee), the dominant tenements, live next to each other in the middle of the west half of the block facing Avenue 54, with the Zimmer property north of the McAfee property. Defendant-appellant Christine E. Wolfrank Dykstra (hereinafter Dykstra), the servient tenement, lives in the middle of the east half of the block facing Avenue 55, with the rear of her lot abutting the rear of the McAfee lot.

There is a nondedicated alley extending north up the middle of the block from Glen Ellen Place between the residences facing west onto Avenue 54 and the residences facing east onto Avenue 55. This alley does not extend the full city block to Longfellow Street; it dead-ends at a point north of the Zimmer property. The alley is partly asphalt, partly concrete, partly rock and partly dirt and is approximately 15 feet wide. A concrete driveway or ramp, approximately 15 feet wide, has been constructed at the entrance to the alley off of Glen Ellen Place. Many of the properties abutting the alley have been improved with garages with no access to the street except by use of the alley. The abutting property owners each own one-half (seven and one-half feet) of the alleyway.

The chronology of acquisition of the properties and the events which precipitated the litigation at bench, as disclosed by the record on appeal and the superior court file,[2] are as follows:

Since 1944, 1945 and 1947, respectively, Dykstra, Zimmer and McAfee have owned and resided on their properties.

Since 1951 and 1947, respectively, Zimmer and McAfee, or their tenants who live in small houses to the rear of their properties, used the alley from Glen Ellen Place to gain access to the garages at the rear of their properties. There are no driveways from Avenue 54 through the lots to the rear of plaintiffs' properties, and the garages were constructed with entry off the alley.

On January 31, 1964, Dykstra made application to construct a new four-unit building on the rear of her lot. The building was completed later the same year. After completing this building, Dykstra erected a "grape

---

[1]Edward Zimmer died January 15, 1974, and Robert Zimmer, executor of his estate, has substituted in his place in accordance with California Rules of Court, rule 48(a) and by order of the court.

[2]Pursuant to rule 12(a) of the California Rules of Court, we have examined the complete superior court file (No. 972081) and exhibits.

stake" fence from the west end of a wooden fence, which ran along the north boundary of her property, extending 3 to 4 feet into the alleyway, south for 16 to 18 feet. (See sketch, *infra*, p. 440.) The "grape stake" fence did not extend the full width of her lot and did not interfere with use of the alley. Some of Dykstra's tenants parked inside the fence facing north and south.

After the "grape stake" fence had been up for a little more than a year, it became damaged and was removed. Thereafter, with the "grape stake" fence removed, some of Dykstra's tenants started parking in the same area but facing east-west. The distance from the new building to the west end of Dykstra's lot (middle of the alleyway) is 22 feet, or 14½ feet from the east side of the alleyway. There was testimony at trial that Dykstra's tenants parked 1½ feet from the building and their cars were between 16 to 18 feet long.

In mid-December 1969 McAfee terminated Dykstra's use of a garage which had been rented for several years by Dykstra for storage purposes. Subsequent to this, Dykstra advised McAfee that she intended to erect a fence across the back of her property to include seven and one-half feet of the alley (down the center of the alleyway).

On December 23, 1969, by letter (Plaintiffs' Exhibit 1), McAfee's attorney notified Dykstra that McAfee claimed a permanent right to use the land for ingress and egress and that if the fence was constructed, legal action would be taken. The letter,[3] dated December 23, 1969, was post-

---

[3]"Christine Wolfrank Dyksdra [*sic*]
250 S. Avenue 55
Los Angeles, California 90042

"Re: Fence construction—250 S. Avenue 55

"Dear Madam:

"I have been consulted by Mr. Zimmer and Mrs. McAfee in regard to your intention to build a fence around your property and thus cause an obstruction to the use of the alley or roadway leading to the rear of my clients' properties. My clients claim an easement for ingress and egress over a strip of land 15 feet wide consisting of 7½ feet of the rear portion of all the lots fronting on Avenue 54 clear to Glen Ellen, and all of the lots fronting on S. Avenue 55 to Glen Ellen. I am informed that that strip of land has been used for access to the rear of those properties for the past 23 years or more. Therefore there has been established a permanent right to the use of that strip of land for ingress and egress to those properties and you have no right to fence in your property so as to cause an obstruction to that use.

"You are hereby notified that should you cause an obstruction to the use of that strip of land for ingress and egress to the properties in question an action will be instituted against you to restrain you from erecting an obstruction or to remove the obstruction if it has been erected prior to the commencement of the suit. In addition

marked December 24, 1969, and was received by Dykstra on December 27, 1969.

On December 26, 1969, Dykstra commenced construction of a "chain link" fence down the middle of the alley. (See sketch, *infra*, p. 440.) The fence was completed on December 29, 1969. As a result of the fence, McAfee and their tenants and Zimmer's tenant were unable to use the garages on the rear of their properties and have had to park on the street because a normal size car could not go through the space that was left.[4]

## THE CASE

On March 4, 1970, plaintiffs-respondents Zimmer and McAfee filed a complaint to quiet title to prescriptive easement and to enjoin interference with their use of the alley. Dkystra and other property owners to the south were named as defendants. The complaint alleges that Zimmer, McAfee and Dykstra all owned the real property heretofore described and that a visibly present alleyway had been continously, openly, notoriously and adversely used by Zimmer and McAfee and their predecessors for more than five years for ingress and egress to the rear of their properties for access to their garages located to the rear of their properties. The complaint further alleges that the defendant Dykstra is unlawfully, wrongfully and forcibly withholding possession of the property from plaintiffs and seeks a decree establishing their (plaintiffs') easement and enjoining defendant Dykstra from interfering with their (plaintiffs') use of the alleyway. The plaintiffs prayed for money damages in the sum of $20 for every day their use of the alleyway was witheld and for punitive damages in the sum of $5,000.

Defendant Dykstra by her answer to the complaint and evidence offered at the trial, although admitting the erection of the "chain link" fence, defends on the theories (1) that plaintiffs' use of her half of the alley was permissive in nature and no prescriptive easement was created; and (2) if plaintiffs acquired a prescriptive easement it was extinguished by nonuse or abandonment by plaintiffs and/or the actions of defendant Dykstra or her tenants.

---

to the remedies mentioned there will be included a claim for damages caused by the interference of the free use of access over said strip of land.

"Yours very truly,
"[Sgd.] Joseph A. Lazaroni
"Joseph A. Lazaroni"

[4]However, there was evidence at trial that a small Honda automobile had negotiated the passageway.

Following the filing of disclaimers of any interest or estate in the plaintiffs' alleged easement by all defendants except Dkystra, the matter was tried nonjury. The trial court found in favor of the plaintiffs and against the defendant. The judgment decreed that plaintiffs Zimmer and McAfee were owners of prescriptive easements over the rear seven and one-half feet of defendant Dykstra's property and the properties of the other defendants who had filed disclaimers; ordered defendant Dykstra to remove her "chain link" fence blocking ingress and egress; and awarded plaintiffs nominal damages in the sum of $10 and exemplary damages in the sum of $1,500 as against Dykstra.

Defendant Dykstra's motion for a new trial was denied.

Defendant appeals from the judgment.

## ISSUES

The controlling issues on appeal are whether or not there is substantial evidence to support the trial court's findings (1) that plaintiffs Zimmer and McAfee acquired a prescriptive easement on the east one-half of the alley; and (2) that they (plaintiffs) did not abandon their prescriptive easements nor were the easements otherwise extinguished.

In addition, Dykstra contends that plaintiffs were not entitled to exemplary damages and if they (plaintiffs) were, the damages awarded were excessive.

## DISCUSSION

*Did plaintiffs Zimmer and McAfee acquire (at any time) a prescriptive easement over the western seven and one-half feet of defendant Dykstra's property, or was the use not adverse, but permissive, with the servient tenement Dykstra consenting to its use as a neighborly accommodation?*

*General:*

██   *First,* the two broad elements required to create a prescriptive easement are (1) an adverse use for (2) the five-year prescriptive period. (Civ. Code, § 1007; Code Civ. Proc., § 321.)

The elements necessary to establish an adverse use are: (a) open and notorious use; (b) continuous and uninterrupted use; (c) hostile to the true owner; and (d) under a claim of right. (3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 365, pp. 2059, 2060 and cases there cited.)[5]

---

[5] An additional element listed by Witkin is that "if any taxes are separately assessed against the easement, these must be paid." (P. 2059.) In the case at bench this issue

The above elements are designed to insure that the owner of the real property which is being encroached upon has actual or constructive notice of the adverse use and to provide sufficient time to take necessary action to prevent that adverse use from ripening into a prescriptive easement.

■ *Second,* the burden of proof as to each and all of the requisite elements to create a prescriptive easement is upon the one asserting the claim. (See *Kerr Land & Timber Co.* v. *Emmerson,* 233 Cal.App.2d 200, 229 [43 Cal.Rptr. 333]; *Serrano* v. *Grissom,* 213 Cal.App.2d 300, 306 [28 Cal.Rptr. 579]; *Hahn* v. *Curtis,* 73 Cal.App.2d 382 [166 P.2d 611]; *Smith* v. *Skrbek,* 71 Cal.App.2d 351, 358 [162 P.2d 674].)

■ *Third,* the existence or nonexistence of each of the requisite elements to create a prescriptive easement is a question of fact for the court or jury. (See *O'Banion* v. *Borba,* 32 Cal.2d 145 [195 P.2d 10]; *Kerr Land & Timber Co.* v. *Emmerson, supra,* 233 Cal.App.2d 200; *Cleary* v. *Trimble,* 229 Cal.App.2d 1, 9 [39 Cal.Rptr. 776]; *LeDeit* v. *Ehlert,* 205 Cal.App.2d 154, 162 [22 Cal.Rptr. 747]; *Zunino* v. *Gabriel,* 182 Cal. App.2d 613 [6 Cal.Rptr. 514, 80 A.L.R.2d 1088].)

■ *Fourth,* on appeal all conflicts must be resolved in favor of the prevailing party and the evidence must be viewed in a light most favorable to him. If there is any substantial evidence to support the judgment, it must be affirmed. (See *O'Banion* v. *Borba, supra; Cleary* v. *Trimble, supra; Zunino* v. *Gabriel, supra; Van. Amersfoort* v. *Young,* 105 Cal.App.2d 22 [232 P.2d 569].)

*Specifically as to the requisite elements and the case at bench:*

■ OPEN AND NOTORIOUS USE—There is no evidence of concealment of the use of Dykstra's portion of the alley by plaintiffs. The evidence is to the contrary. There is substantial direct evidence that plaintiffs or their tenants used that portion of the alley, day and night, Zimmer from 1951 and McAfee from 1947 until defendant Dykstra blocked the use of the alley in December 1969 by errecting the "chain link" fence (close to 20 years).

The facts that (1) the plaintiffs' garage doors open onto the alley; (2) the alley "dead-ends" to the north; and (3) plaintiffs' lots have no driveways

---

was never raised in the pleadings or proof offered at the trial as to who paid the taxes. Accordingly, the fact that plaintiffs did not pay the taxes on ·the disputed portion of the alley, if that be the fact, does not preclude their acquisition of a prescriptive easement "absent a showing that the easement was separately assessed, burden of proof of which is upon the owner of the servient estate" [Dykstra]. (See *Cleary* v. *Trimble,* 229 Cal.App.2d 1, 11 [39 Cal.Rptr. 776]; *Glatts* v. *Henson,* 31 Cal.2d 368 [188 P.2d 745].)

from Avenue 54 to the rear of their properties are strong, substantial and indirect evidence corroborating an open and notorious use of the entire alley by plaintiffs or their tenants.

■ CONTINUOUS AND UNINTERRUPTED USE—The evidence referred to above also constitutes substantial evidence to support a finding of continuous and uninterrupted use by plaintiffs.

■ "A use may be *continuous* [italics added] though there are periods of time more or less extended between the specific acts of use. Many easements, such as rights of way and rights of hunting or fishing, which are periodical or only occasional in use may be acquired by prescription. The requirement means that there be no break in the essential attitude of mind required for adverse use rather than that the use be constant." (Rest. Property, div. V, Servitudes (1944) ch. 38, § 459, subsec. (1)(b), pp. 2936-2937.)

The fact that plaintiff Zimmer's tenants for a period of time instead of Zimmer used the alleyway does not break the continuity. The personal use by Zimmer, the dominant tenement, is not required. (See *Weyse* v. *Biedebach,* 86 Cal.App. 712 [261 P. 1086]; *Kellogg* v. *Huffman,* 137 Cal.App. 278 [30 P.2d 593].)

■ "An *interruption* [italics added] of an adverse use results only from an act of one against whom the use is adverse. The act may consist in either, (1) bringing and pursuing to judgment legal proceedings in which the use is determined to be without legal justification, or (2) producing a cessation of the use without the aid of legal proceedings." (Rest., Property, div. V, Servitudes (1944) ch. 38, § 459, subsec. (2)(c), p. 2938.)

In the case at bench defendant Dykstra did not initiate the judicial determination. The acts of Dykstra or her tenants to produce "cessation of the use without the aid of legal proceedings" consisted of (1) Dykstra's construction of the "grape stake" fence in the mid-1960's (see sketch, *infra,* p. 440); (2) Dykstra's tenants' parking facing east-west with the vehicles extending a few feet into the alley; and (3) Dykstra's construction of the "chain link" fence in late December 1969 (see sketch, *infra,* p. 440). None of the above occurrences interrupted partially or totally the use of the portion of the alley in dispute until many years after the minimum five-year statutory prescriptive period. Whether or not these partial or total interruptions extinguished plaintiffs' acquired prescriptive easement will be discussed *infra.*

■ HOSTILE AND UNDER CLAIM OF RIGHT—Although the theory of an implied grant has not been advanced in the case at bench, the evidence shows that the properties of the parties herein at one time were owned by a common grantor who developed "the Reilly's Spring Tract" (defendant's exhibit M).

The evidence is uncontradicted that on November 11, 1913, one Theophile C. Naud by grant deed conveyed Lot 4 and Lot 15 to his wife, Rosalie B. Naud. Plaintiffs Zimmer and McAfee presently own and reside on Lot 15, while defendant Dykstra owns and resides on Lot 4 (see sketch *infra,* p. 440, and defendant's exhibit M). That grant deed from Theophile C. Naud to Rosalie B. Naud (defendant's exhibit L) contains the following: ". . . reserving and excepting from the rear end or portion of each said lots a strip of land of uniform width of seven and one-half feet, the same being hereby reserved and excepted for alley way purposes." Moreover, the Policy of Title Insurance No. 3007529, dated April 22, 1949, (defendant's exhibit K) which shows title to Lot 4 vested in defendant Dykstra and her former husband, includes under Schedule B the following verbiage: "(B)—Liens and encumbrances to which said title is subject. . . . 4. An easement over the westerly 7.5 feet of said land, as reserved and excepted for alley way purposes in the deed from Theophile C. Naud, . . ."

The above strongly suggests the probability that all the successors-in-interest to the one who developed "the Reilly's Spring Tract," including the parties hereto, at all times regarded their right to use the opposite one-half of the nondedicated alley as something permanent and non-revocable, i.e., as being in the nature of an easement as distinguished from a mere license. We therefore hold "that the user was at all times hostile and adverse in the sense that it was exercised under a claim of right." (See *Jones* v. *Harmon,* 175 Cal.App.2d 869, 876, 877 [1 Cal.Rptr. 192].)

PRESCRIPTIVE PERIOD—The period of prescription in California is five years. This is a minimum period established by statute. (Civ. Code, § 1007; Code Civ. Proc., § 321.) As heretofore discussed, the evidence is overwhelming that the adverse use by plaintiffs, and each of them, exceeded the five-year statutory period.

Accordingly, by reason of the foregoing, we conclude there is substantial evidence to charge defendant Dykstra with both actual and constructive knowledge of adverse use by plaintiffs for the prescriptive period and to support the trial court's finding as to the existence of every element

necessary to establish a prescriptive easement in favor of plaintiffs, and each of them.

In the instant case once plaintiffs Zimmer and McAfee rested their case, having the burden of proving the creation of a prescriptive easement, the burden of proof and the burden of going forward with the evidence shifted to defendant Dykstra to prove abandonment by plaintiffs by reason of nonuse or extinguishment by Dykstra's or her tenants' action.

*Was the prescriptive easement acquired by plaintiffs Zimmer and McAfee extinguished by reason of nonuse or abandonment?*   NO.

Defendant Dykstra in her answer alleged "Zimmer abandoned his claim to an easement more than one year prior to the date of this Answer by allowing his tenant to put a fence and gate around the entire rear portion of Plaintiff Zimmer's lot."[6] At the trial defendant Zimmer testified the gate was put up by his tenant to keep a dog in, was never locked, **and** was on wheels and was up only two to two and one half years.

While an easement created by grant is not lost by mere nonuse, intent to abandon being an essential element, one created by prescription may be if the nonuse is for the prescriptive period. (See 17 Cal.Jur.2d, Easements, § 36, pp. 144, 145.)

In *People* v. *Ocean Shore Railroad,* 32 Cal.2d 406 [196 P.2d 570, 6 A.L.R.2d 1179], the court said at page 419: "Moreover, it is not necessary to show an intent to abandon in order to prove loss of an easement acquired by prescription. Civil Code, section 811, subdivision 4, provides that a servitude is extinguished 'when the servitude was acquired by enjoyment, by disuse thereof by the owner of the servitude for the period prescribed for acquiring title by enjoyment.' The decisions interpreting this subdivision have without discussion applied it as operating to terminate such an easement by nonuser alone. (*Garbarino* v. *Noce,* 181 Cal. 125, 130 [183 P. 532, 6 A.L.R. 1433]; *City of Los Angeles* v. *Pomeroy,* 125 Cal. 420, 425 [58 P. 69]; *Drake* v. *Russian River Land Co.,* 10 Cal.App. 654, 666 [103 P. 167]; cf. *McRose* v. *Bottyer,* 81 Cal. 122, 125 [22 P. 393].)"

In the case at bench defendant's contention that the erection of a fence by Zimmer's tenants in order to contain their dog extinguished Zimmer's easement is without merit because there is substantial evidence that a gate on wheels, was constructed in the fence, and the use of the alley

---

[6]Clerk's transcript, page 11.

continued with cars going and coming through the gate,[7] and the fence or gate in question was not up for the five-year prescriptive period as required by Civil Code section 811, subdivision 4.

*Was the prescriptive easement acquired by plaintiffs extinguished by action of defendant Dykstra or her tenants?* NO.

Generally, a prescriptive easement once acquired can be extinguished by actions of the servient tenement which satisfy the same elements required for the creation of the easement.

In the instant case the only actions which may serve as a basis to extinguish the easement are (1) the erection of the "grape stake" fence; (2) the parking of the cars in an east-west direction by defendant's tenants so they protruded into the alley; and (3) the erection of the "chain link" fence.

Each of the above enumerated conditions existed for less than the five-year minimum statutory period. The "grape stake" fence was up for a little more than one year prior to the cars being parked facing east-west for approximately four years which was followed by the "chain link" fence for less than a year (construction, December 1969—complaint filed March 4, 1970).

Defendant Dykstra contends that the statutory period is satisfied by a "tacking" together of any two of the consecutive periods referred to above.

We disagree. We hold that although property boundaries may be described by metes and bounds that plaintiffs' prescriptive easement was not extinguished under the facts of the instant case by the leaps and bounds method as contended by defendant.

Although, in an adverse possession case the periods of time, within which different successive parties may have asserted a right, may be "tacked" together to satisfy the statutory period, the *perimeter* of the real property must remain fixed and not fluid throughout the statutory period. (See *Dietz* v. *Mission Transfer Co.,* 3 Cal.Unrep. 354, 364 [25 P. 423].) By analogy, and for the reasons stated below, we hold that the land areas over which a servient tenement claims adverse use to the dominant tenement's in order to extinguish a prescriptive easement, must also remain the same throughout the statutory period.

As for the "grape stake" fence—it did not enclose the full area in ques-

---

[7]In *McCarty* v. *Walton,* 212 Cal.App.2d 39 [27 Cal.Rptr. 792], the court held the act of parties claiming an easement, in building a stone wall across the path of the alleged roadway easement, did not compel a finding that the easement was abandoned, where a gate was left in the wall.

tion but extended only 3 to 4 feet into the alley from the north boundary of Dykstra's property and then south for 16 to 18 feet (see sketch, *infra,* p. 440) and did not destroy plaintiffs' prescriptive right to the remainder of the contested area.

In the *Zunino* case, *supra,* the court affirmed judgment for plaintiffs-respondents in an action to quiet title to an easement for road purposes alleged to have been acquired by prescription. In ruling against the defendants' contention that at one point the right of way was only 17 feet wide due to an abutment that was constructed, the court said at page 619: "This condition has existed since 1955, and appears to have been caused by a wrongful interference with respondents' right of way, as to which the prescriptive period had already been perfected. The evidence adequately demonstrated that the easement was at least 20 feet wide, except in the area of the abutment. The existence of this encroachment does not destroy the prescriptive right to the remainder of the easement."

As for the period of time Dykstra's tenants parked their vehicles facing east-west (between the removal of the "grape stake" fence and the erection of the "chain link" fence), it cannnot be "tacked" to the time either of the fences were up in order to meet the minimum five-year prescriptive period requirement because (a) the prescriptive easement area invaded by the cars is a small portion of the total area, and (b) the vehicles were not "continuously" parked in such a manner, place or time as to prevent plaintiffs or their tenants from driving normal sized automobiles over the contested area to their garages.

Defendant Dykstra relies on the case of *Ross* v. *Lawrence,* 219 Cal. App.2d 229 [33 Cal.Rptr. 135] to support her contention that the parking of her tenants' cars extinguished any prescriptive easement which plaintiffs may have acquired. The *Ross* case is factually distinguishable. In *Ross,* contra the case at bench, the defendants blocked and obstructed the subject easement so as to make it impossible for plaintiffs to pass over the same area, except for three times in an eight-year period, and in a manner and during times which rendered the easement across the servient tenement of no practical worth to the owner of the dominant tenement.

In the case at bench there is substantial evidence that the parking of defendant's tenants' cars in an east-west direction protruding a few feet into the alley, did *not* render plaintiffs' use of the eastern half of the area useless.

The parking of the cars in the instant case is also analogous to a situation and contention in the case of *Silveira* v. *Smith,* 198 Cal. 510 [246 P. 58].

In that case, the owner of the property which the easement traversed erected a fence and maintained a gate on the disputed easement and because of that the property owner contended the easement had been destroyed. The court said at page 519: "This contention would have a considerable, if not a controlling, persuasiveness were it not for the fact that after the inclosure of said servient tenement by the owners thereof and the establishment and maintenance of the gate above referred to such gate was never locked and the owners of said dominant tenement continued as before in the use of said roadway and Embarcadero in the same manner and to the same extent as their predecessors had anciently used and enjoyed the same, and that such unobstructed use and enjoyment continued down to a period shortly before the institution of the present action."

As an unlocked gate was to *Silveira,* so are the noncontinuously parked cars to the case at bench; i.e., there was insufficient conduct to destroy the easement.

As for the "chain link" fence—although the "chain link" fence prohibited use of any portion of the area encompassed in plaintiffs' prescriptive easement and apparently satisfied all elements necessary to extinguish the easement, it does not do so, being four years shy of the five-year mandatory statutory period.

Since defendant is unable to "tack" on the previous four-year period in which her tenants parked their cars facing east-west, for the reasons heretofore discussed, she has failed to satisfy all the requisite elements necessary to extinguish plaintiffs' prescriptive easement.

*Were the damages properly assessed?* YES.

The case at bench is somewhat analogous to the "spite" fence[8] or nuisance cases.

In *Hutcherson* v. *Alexander,* 264 Cal.App.2d 126, 130 [70 Cal.Rptr. 366, 38 A.L.R.3d 636] the court said at page 130: "It is the general rule that the unreasonable, unwarrantable or unlawful use by a person of his own property so as to interfere with the rights of others is a nuisance (66 C.J.S., Nuisances, § 1, p. 727). In fact, any unwarranted activity which causes substantial injury to the property of another or obstructs its reasonable use and enjoyment is a nuisance which may be abated, And, even

---

[8]Civil Code, section 841.4: "Any fence or other structure in the nature of a fence unnecessarily exceeding 10 feet in height maliciously erected or maintained for the purpose of annoying the owner or occupant of adjoining property is a private nuisance. Any owner or occupant of adjoining property injured either in his comfort or the enjoyment of his estate by such nuisance may enforce the remedies against its continuance prescribed in Title 3, Part 3, Division 4 of this code."

a lawful use of one's property may constitute a nuisance if it is part of a general scheme to annoy a neighbor and if the main purpose of the use is to prevent the neighbor from reasonable enjoyment of his own property (*Griffin* v. *Northridge*, 67 Cal.App.2d 69 [153 P.2d 800]). Thus, we do not find it necessary to discuss all of the theories which the trial court may have considered when it arrived at its judgment."

In *Griffin* v. *Northridge*, 67 Cal.App.2d 69 [153 P.2d 800], a nuisance case, the court in affirming the lower court's judgment assessing damages, without comment, in the sum of $1,000, in which the defendants embarked on a course of conduct amounting to a shocking display of ill-will "and exposing the fangs of their malice." The court said at page 75: "Even though the fence had not been ten feet in height still it was a nuisance if it was constructed with malicious intent, interfered with plaintiffs' full enjoyment of their home and if its usefulness to defendants was 'subordinate and incidental.' [Citation.]" At page 76 the court stated: "The judgment is not excessive. For the personal discomfort and annoyance to which a person has been subjected by a nuisance on adjoining property, the determination of the amount of his compensation is a question for the trial court. (*Dauberman* v. *Grant, supra,* p. 590.) It is not necessary that compensation for a nuisance should be denied because it is not continuous. Neither should a plaintiff be denied recovery because he is deprived of only a part of his property, comfort or life. (*Judson* v. *Los Angeles Suburban Gas Co., supra,* p. 172.) A judgment will not be disturbed so long as it is supported by any substantial evidence. (*Bellman* v. *San Francisco H. S. District,* 11 Cal.2d 576, 581 [81 P.2d 894].) A single intentional trespass on the rights of another justifies an award of punitive damages against the wrongdoer. If the act is maliciously done the damages may be enhanced to such extent as will afford complete redress. (20 R.C.L., p. 471.) Judgment affirmed."

■ The substantial evidence in the case at bench, direct and indirect, which supports the trial court's finding of oppression and malice, is inconsistent with defendant's testimony that she believed that she had the right to fence the area in dispute because she "believed that the area was private property because it was 'not a legally dedicated area'" and consists of: (1) the statement in the letter of November 7, 1969 (approximately two months prior to the chain link fence being erected) from M. Bliss, Chief of the Inspection Division of the Department of Building and Safety of Los Angeles to defendant Dykstra (Exhibit J) which, in part, said: "The driveway which will be obstructed by the proposed fence is not a legally dedicated alley, so this Department has no objection to the fence. . . . Your intention to consult a lawyer on this matter is good. There may be other problems outside the jurisdiction of the Department of Building and Safety involved in fencing a driveway

which has been used by the public for some time"; (2) plaintiff's policy of title insurance referred to "an easement over the westerly 7.5 feet of said land, as reserved and excepted for alley way purposes . . ." (Exhibit K referred to *supra*); (3) the evidence that defendant and her husband "were unhappy" when McAfee asked them to vacate the garage they had rented to Dykstra for storage purposes when Dykstra's tenancy ended in December 1969 (a short time before Dykstra built the chain link fence); and finally, (4) in the instant case the trial judge viewed the scene. "It is settled that a view of the scene by the trial judge is independent evidence on which a finding may be made and sustained . . . ." (*Hutcherson* v. *Alexander, supra,* p. 131.)

Defendant relies on *Forte* v. *Nolfi,* 25 Cal.App.3d 656 [102 Cal.Rptr. 455] in support of her contention that exemplary damages should not be awarded in the absence of evidence of the wealth of the wrongdoer. We are not confronted with whether or not the wealth of the defendant is admissible or inadmissible. We hold there was no necessity for such evidence to be introduced by plaintiff.

In *Hanley* v. *Lund,* 218 Cal.App.2d 633 [32 Cal.Rptr. 733], the court said at pages 645 and 646: "The California cases dealing with the introduction of evidence of defendant's wealth, when punitive damages have been assessed, are cases in which the plaintiff had introduced, or sought to introduce, evidence of defendant's wealth. The only question before the reviewing courts in these cases was the admissibility, as contrasted with the necessity, of such evidence. The parties were content to go to the jury on the implied basis that defendant's ability to pay was consistent with his occupation. He did not contend, either in the trial court or here, that in fact the award made was excessive in the light of his financial status. Since no authority, anywhere, expressly directs that the plaintiff must introduce evidence of defendant's wealth when seeking exemplary damages, we find no merit in defendant's contention in this regard."

For the reasons above stated, we hold that the damages assessed in the instant case were proper in all respects, not excessive, and supported by substantial evidence.

Judgment affirmed.

Lillie, Acting P. J., and Thompson, J., concurred.

**440**

⊞ — AREA AT ISSUE
① — PREVIOUS "GRAPE STAKE" FENCE
② — CHAIN LINK FENCE

Portion of REILLY'S SPRING TRACT
(TRACT No 3307)