Filed 4/16/26  Deffenbaugh v. Chang CA6

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THEODORE DEFFENBAUGH et al., | H051820 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 19CV349742) |
| v. | |
| IVY CHANG et al., | |
| Defendants and Respondents. | |

This case involves several adjacent properties in Los Gatos.  The main properties at issue, one owned by Lauri and Theodore Deffenbaugh and the other by Scott Watson and Ivy Chang, were once unified.  A private roadway provides the sole access to public roads for both properties.  The properties have other overlapping uses as well, including several paths and a pool on the Watson/Chang property that the Deffenbaughs and their tenants' use.  After purchasing their property in 2016, the Deffenbaughs made improvements, many to the pool area, building or renovating structures as well as grading and paving several areas.  Watson and Chang objected that some of the improvements were on their property and others beyond the scope of a written easement for the pool.

In 2019, the Deffenbaughs sued Watson and Chang, and later added Mark Church, the owner of a nearby property.  The Deffenbaughs sought, among other things, to quiet title concerning prescriptive easements on the Watson/Chang property, the scope of the express easement for the pool area, and ownership of a portion of the private roadway

used to access the properties. Watson and Chang filed a cross-complaint asserting trespass, nuisance, and other claims. After conducting a three-phase bench trial, the trial court issued three statements of decision. These statements rejected all of the Deffenbaughs' claims, granted the Watson and Chang cross-claims, and awarded Watson and Chang $850,000 in compensatory and punitive damages as well as requiring the Deffenbaughs to remove structures on the Watson/Chang property and restore several areas to a natural state.

The Deffenbaughs appeal, arguing that their prescriptive easement claims should be reinstated, the trial court's rulings concerning the pool easement and ownership of the roadway reversed, and the compensatory and punitive damages awards vacated. As explained below, we reject each of these arguments and affirm the judgment.

## I. BACKGROUND

### A. The Properties at Issue

There are four properties involved in this case. The two main properties were originally part of a single property owned by Cloyde Taughinbaugh, which was later divided into northern and southern parcels. Church owns a property adjacent to the southern parcel, and there is a small fourth property between the other three properties. These properties are described below.

#### 1. *The Deffenbaugh Property*

After Taughinbaugh subdivided his original property in 1972, he sold the northern parcel, which maps label as either Parcel Two or Parcel 106. The northern parcel was later transferred to Scotty McEwen, who lived on it until her death in 2014. In 2016, the property was sold to the Deffenbaughs.

The Deffenbaugh property contains two rental units, called the Barn and the Treehouse. The Deffenbaughs and their tenants use private roadways to access the Deffenbaugh property. In addition, as described later, the Deffenbaughs have an express easement for a pool located on the Watson/Chang property.

2

### 2. *The Watson/Chang Property*

Scott Watson purchased the southern parcel on the original Taughinbaugh property, which maps label as Parcel One or Parcel 107, in 2012. Watson is married to Ivy Chang, and they now jointly own the property.

### 3. *Parcel 108*

Watson also owns a small parcel, which maps label as Parcel 108, to the south of the Deffenbaugh property and the east of the Watson/Chang property. Taughinbaugh obtained title to Parcel 108 in a 1977 quiet title action. Two years later, Church quitclaimed any interest in Parcel 108 in exchange for an exclusive open space easement over it.

### 4. *The Church Property*

Church's property, which maps label Parcel 109, lies to the east of the Watson/Chang property and Parcel 108, and to the south of the eastern most portion of the Deffenbaugh property.

## B. The Vacated Roadway

In 1972, Taughinbaugh dedicated two strips of land from his then-undivided property to the Town of Los Gatos for the expansion of two public roads. However, in December 1979 the town issued a resolution vacating a portion of this dedication. The resolution contained a legal description of the vacated roadway as well as a map depicting it. According to the map, the vacated roadway begins near the property line between the Deffenbaugh property and Parcel 108, later turns southeast, and then runs along the property line between the Watson/Chang property and the Church property. This is the roadway used by the Deffenbaughs and their tenants, as well as Watson and Chang, to access their properties from the public roadway.

## C. The Pool Easement

In 1982, Taughinbaugh granted Scotty McEwen, the former owner of the Deffenbaugh property, an express easement over part of what is now the Watson/Chang

property. The easement is for a pool and the area immediately surrounding it. It grants "an exclusive easement on, over, and under the portion of the Taughinbaugh parcel hereinafter described [the Watson/Chang property] for the installation, use, maintenance and repair of a swimming pool, pool deck, pool equipment and appurtenances and for other customary and usual related purposes."

### D. The Deffenbaughs' Improvements

After purchasing their property in 2016, the Deffenbaughs made improvements, primarily for tenants, on the Watson/Chang property.

In the area covered by the pool easement, which is near the Barnhouse rental unit, the Deffenbaughs added a prefabricated shed for storage and additional pavement for the shed and for parking. In addition, to accommodate a tenant's Ferrari, the Deffenbaughs added a garage with a climbing wall, part of which was located on the Deffenbaughs' property, but most of which was in the pool easement area. The Deffenbaughs also stripped a part of the pool easement area of vegetation, graded it, and surfaced it with rock and gravel. Finally, the Deffenbaughs allowed a tenant to convert a tool shed built in 2000 in the pool easement area, into a home office (albeit without permits from Los Gatos).

Outside the pool easement area, the Deffenbaughs constructed an 80-foot retaining wall on the uphill side of a pathway on the Watson/Chang property leading to the Treehouse rental unit, converted a hillside walking path into cement (without grading or construction permits), and constructed an accessory building, wired for electricity, for the Treehouse tenants to use as storage or an office.

Finally, on part of the Watson/Chang property, the Deffenbaughs excavated into a hillside to create a path to their compost bins, which they paved.

Watson objected to many of the Deffenbaughs' improvements. However, when Los Gatos cited the Deffenbaughs for erecting structures without permits, Mr.

4

Deffenbaugh defended himself by asserting that the structures were on the Watson/Chang property.

### D. The Proceedings Below

#### 1. *The Pleadings*

In 2019, the Deffenbaughs sued Watson and Chang, and in September 2022 they filed a second amended complaint adding Church as a defendant. The Deffenbaughs asserted five quiet title claims, concerning not only the scope of the pool easement but also alleged prescriptive easements for, among other things, structures on the pool easement, several pathways, and the vacated roadway. The Deffenbaughs also brought a quiet title claim asserting ownership of a portion of the vacated roadway. Finally, the Deffenbaughs asserted claims against Watson and Chang for nuisance, civil extortion, and intentional infliction of emotional distress.

In 2019, Watson and Chang filed cross-claims for trespass, for nuisance, and to quiet title. Watson and Chang also asserted a claim for "Damages for Removal of Survey Stakes" under Penal Code section 605 based on Mr. Deffenbaugh moving monuments marking property lines during construction of the garage, which encroached from their property into the pool easement area. Alleging that this was done maliciously, Watson and Chang requested punitive damages. Chang and Watson also later amended the cross-complaint to add a quiet title claim concerning the vacated roadway.

#### 2. *The Bench Trial*

The case was tried before the trial court in three phases.[1]

---

[1] The trial court originally intended to try the Deffenbaughs' claims for civil extortion and intentional infliction before a jury. However, during the second phase of the bench trial, the court ruled certain evidence inadmissible and granted Watson and Chang judgment on the pleadings with respect to these claims.

a. <u>Phase One</u>

Phase One of the bench trial concerned claims involving Church: the vacated roadway, Parcel 108, and Church's easement over that parcel. The Deffenbaughs asserted prescriptive easements over the roadway, which they contended arose before Watson purchased the Watson/Chang property in 2012. However, the trial court excluded evidence concerning use of the roadway by tenants on the Deffenbaugh property before 2012 because the Deffenbaughs failed to present evidence that Watson had notice of this use when he purchased the Watson/Chang property in 2012. Accordingly, the Deffenbaughs were limited to presenting evidence of use after the purchase.

When the Deffenbaughs rested their case, which took nine days of trial to present, Church moved for judgment under Code of Civil Procedure section 631.8 on the claims involving him. After announcing its tentative decision to grant the motion, the trial court held oral argument. During this argument, the Deffenbaughs requested leave to present additional testimony from witnesses presented earlier. The court acknowledged that the Code of Civil Procedure authorizes requests to present additional evidence, but it refused to permit the Deffenbaughs to "bring in the same witnesses again and hope that you get a different set of answers than the evidence the Court already heard." At the conclusion of the argument, the trial court orally granted Church's motion and instructed his counsel to prepare a proposed statement of decision for phase one of the trial.

In its statement of decision, the trial court concluded that the Deffenbaughs failed to establish an essential element for prescriptive easements: "continuous, uninterrupted use of the land at issue . . . for a period of five year preceding the filing of the action." The court also denied the Deffenbaughs' quiet title claim concerning the vacated roadway. It concluded that the Deffenbaughs had "not met their burden to quiet title to any portion of the vacated roadway because no portion of the vacated roadway from the

6

fork in the road to the Upper Turn Around Spot"—the portion claimed by them—"lies on [their] land."

b. Phase Two

The second phase of the trial addressed the Deffenbaughs' prescriptive easement claims concerning other areas of the Watson/Chang property, the express pool easement, and the counterclaims of Watson and Chang. This phase took five days.

After the close of evidence, Watson and Chang moved to amend their cross-complaint to conform to proof by adding a punitive damage request to their trespass cross-claim in addition to the punitive damages sought in their Penal Code section 605 claim. The Deffenbaughs objected that this request introduced new issues requiring additional discovery, but the trial court disagreed. Noting that Mr. Deffenbaugh's motivation had been the subject of discovery and that there already was evidence in the record of despicable conduct under Civil Code section 3294, the court found that the amendment to conform would not be unduly prejudicial. In addition, to protect against prejudice, the trial court afforded the Deffenbaughs the opportunity to present additional testimony concerning punitive damages.

The trial court subsequently issued a second statement of decision. Although the court found that the Deffenbaughs had an easement for ingress and egress using the vacated roadway and that the parties shared responsibility for repairing a retaining wall, it rejected the prescriptive easements claimed by the Deffenbaughs. The court also rejected the Deffenbaughs' contentions concerning the scope of the pool easement, finding that they had no right "to convert the [preexisting tool shed] into living or office space, or to pave for parking or build a garage, storage shed, or any other structure in the Swimming Pool Easement."

With respect to the Watson and Chang cross-claims, the trial court ruled that there was no private right of action under Penal Code section 605. However, the court found that Watson and Chang had proven that the Deffenbaughs intentionally trespassed on the

7

Watson/Change property, and that the unpermitted improvements and alterations made by the Deffenbaughs constituted nuisances, which had to be removed and that the land had to be restored to a natural state. Finally, the trial court awarded Watson and Chang $85,000 in compensatory damages and found that Watson and Chang were entitled to punitive damages because Mr. Deffenbaugh had engaged in trespass with malice, oppression, and fraud.

### c. Phase Three

The final phase of the trial was conducted "for the sole purpose of deciding the amount of punitive damages" owed by the Deffenbaughs. After considering evidence of the Deffenbaughs' financial status, the court awarded $765,000 in punitive damages, which it found was nine times the size of the damages award and less than ten percent of the Deffenbaughs' net worth.

### d. Judgment

The trial court entered judgment on December 19, 2023. The Deffenbaughs filed a timely notice of appeal on January 16, 2024.

## II. DISCUSSION

The Deffenbaughs challenge five sets of rulings: (1) the denial of their prescriptive easement claims, (2) the denial of their claims concerning the scope of the express easement for the pool, (3) the denial of their claim of ownership over a portion of the vacated roadway, (4) the compensatory damages award, and (5) the punitive damages award. These challenges are addressed below.

### A. The Prescriptive Easements

In the first and second statements of decision, the trial court denied the Deffenbaughs' claims of various prescriptive easements. The Deffenbaughs argue that the trial court improperly excluded evidence of use before Watson purchased the Watson/Chang property in 2012, they were improperly prevented from presenting additional evidence in opposition to the Code of Civil Procedure section 631.8 motion for

8

judgment, and the Church easement rendered parking in one area adverse. We reject each of these arguments.

### 1. *Relevant Legal Principles*

Before addressing the Deffenbaughs' arguments, we briefly review the law concerning prescriptive easements.

Easements generally confer "the privilege of doing a certain act on, or to the detriment, of another's property." (*Wright v. Best* (1942) 19 Cal.2d 368, 381.) Such privileges are "nonpossessory" and "restricted . . . to a specific use or activity upon another's property." (*Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1306 (*Mehizadeh*).) A prescriptive easement is an easement created by unauthorized use of land. (*Connolly v. Trabue* (2012) 204 Cal.App.4th 1154, 1162 (*Connolly*).) Prescriptive easements are similar to adverse possession, but prescriptive easements involve use rather than possession of property, and rather than conferring ownership, prescriptive easements confer the right to make a specific use of another's property. (*Mehdizadeh*, at p. 1305.)

"The elements necessary to establish a prescriptive easement are well settled. The party claiming such an easement must show use of the property has been open, notorious, continuous and adverse for an uninterrupted period of five years." (*Warsaw v. Chicago Metallic Ceilings, Inc*. (1984) 35 Cal.3d 564, 570 (*Warsaw*); see also *Zimmer v. Dykstra* (1974) 39 Cal.App.3d 422, 430 (*Zimmer*).) "Whether the elements of prescription are established is a question of fact for the trial court" (*Warsaw*, at p. 570), and a "trial court's finding of the existence of a prescriptive easement must be based upon clear and convincing evidence" (*Connolly*, *supra*, 204 Cal.App.4th at p. 1162). A party obtaining an easement by prescription need not sue to perfect it; instead, the property owner must sue within the prescription period to bar further adverse use. (*Id*. at pp. 1162-1164.)

However, even where a prescriptive easement has been created, it does not bind a subsequent bona fide purchaser of the property without notice of the easement. (*Gamerberg v. 3000 E. 11th St., LLC* (2020) 44 Cal.App.5th 424, 430-433 (*Gamerberg*).)

9

California courts have long recognized that "[a] purchaser of land for value takes subject only to interests in the land of which he has actual notice or which appear of record," and "[t]he rule applies as well to easements as to claims of a greater interest." (*Mesmer v. Uharriet* (1916) 174 Cal. 110, 116 (*Mesmer*); see also *Johnson v. Cella* (1953) 122 Cal.App.2d 72, 74 ["the subsequent grantee who claims protection as a bona fide purchaser is entitled to such protection unless it is established that he is chargeable with actual or constructive notice of the existence of the easement"].)

### 2. Use Before Watson's Purchase

The trial court excluded evidence concerning use of the former public roadway on the Watson/Chang property, the Upper Turn-Around Area, and a walkway mostly on the property before Watson purchased the Watson/Chang property in 2012 because the Deffenbaughs failed to present evidence that Watson had notice of this use. The Deffenbaughs contend that, in excluding this evidence, the trial court abused its discretion and committed legal error. We disagree. In demanding evidence of notice before permitting evidence of prior usage, the trial court applied well-established rules of evidence.

#### a. The Trial Court's Rulings

At trial, the Deffenbaughs presented testimony from Lisa Farinella, a tenant on the Deffenbaugh property for seven years before Watson's purchase. When the Deffenbaughs' counsel asked Farinella if she regularly parked her car in the Upper Turn-Around Area "between 2005 and 2012," counsel for Watson and Chang objected based, among other things, on relevance. The trial court sustained the objection, explaining that "Mr. Watson took ownership in 2012" and "[what is] really relevant to me is the five-year period before the lawsuit was filed."

In response, the Deffenbaughs' attorney pointed out that "if a prescriptive easement ripened before [Watson's] possession and then he took possession with notice of the use," Watson took the property subject to the prescriptive easement. In so doing,

10

counsel directed the trial court to *Zimmer*, *supra*, 39 Cal.App.3d 422. After examining *Zimmer* during a recess, the trial court acknowledged that use before acquisition of a property may "be tacked . . . to the period after acquisition of the property if "the burdened property owner had actual or constructive knowledge" of the use. However, the court observed, "standing alone . . . evidence of what the use was in 2007 is not relevant." Accordingly, the court concluded evidence of use before Watson's purchase "only has value to the extent that the same use was continuing after 2012," or "there's some evidence . . . that [Watson] had knowledge of the fact." As the Deffenbaughs did not present any evidence that Watson had notice of Farinella's use before Watson's purchase, Farinella only testified concerning use after the purchase.

The next day, the trial court discussed the testimony expected from Bob Watson—a relative of Scotty McEwen, the former owner of the Deffenbaugh property, unrelated to Scott Watson—who long resided on the Deffenbaugh property. Before Bob Watson testified, the trial court informed the Deffenbaughs that it would not allow testimony about activity before Scott Watson's purchase in 2012 unless Bob Watson testified that the activities continued past 2012. Accordingly, when Bob Watson was asked about activity before 2012, the trial court sustained an objection based on relevance. The court explained that, "unless you can establish a foundation that there was any communication . . . between Mr. Bob Watson and Mr. Scott Watson in which there was some discussion about the condition of the property in this area in or around 2012, I don't see why activities that happened as early as 2000 have any relevance."

b. Analysis

The trial court properly excluded testimony concerning activity before 2012 because the Deffenbaughs failed to establish the relevance of that evidence.

"Sometimes the relevance of evidence depends on the existence of a preliminary fact." (*People v. Lucas* (1995) 12 Cal.4th 415, 466.) In that situation, "[t]he proponent of the proffered evidence has the burden of producing evidence as to the existence of the

11

preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact." (Evid. Code, § 403, subd. (a).) The decision whether such foundational evidence is sufficient " 'is a matter within the court's discretion.' " (*People v. Bacon* (2010) 50 Cal.4th 1082, 1103.)

The trial court did not abuse its discretion in concluding that the relevance of the evidence of use before 2012 depended on Watson's notice of that use. Evidence is relevant if it has a "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) As noted above, prescriptive easements do not bind a subsequent bona fide purchaser unless the purchaser had actual or constructive notice of the easements. (See, e.g., *Mesmer*, *supra*, 174 Cal. at p. 116; *Gamerberg*, *supra*, 44 Cal.App.5th at pp. 400-403.) As a consequence, evidence of use before Watson's purchase is of consequence—and, thus, relevant to their quiet title claim—only if Watson had notice of that use. Because the Deffenbaughs failed to present evidence of such notice, the testimony that they sought to present of use before Watson's purchase was irrelevant and inadmissible. (Evid. Code, § 403, subd. (a).)

The Deffenbaughs do not dispute that, in addition to showing the existence of previously existing easements, they were required to show that Watson received notice of those easements. Instead they assert that the issues are "*independently relevant*." However, the Deffenbaughs fail to explain why existence of the easements is relevant absent Watson's notice, and unexplained, conclusory assertions are "wholly inadequate to tender a basis for relief on appeal." (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435; see also *In re S.C.* (2006) 138 Cal.App.4th 396, 408 (*S.C.*) ["conclusory claims of error will fail"].) In any event, as shown above, because Watson is not subject to prescriptive easements created before his purchase unless he had notice of them (*Mesmer*, *supra*, 175 Cal. at p. 116; *Gamerberg*, *supra*, 44 Cal.App.5th at pp. 430-433), the

12

relevance of activity before Watson's purchase plainly is dependent on notice of that activity.

In a footnote in their reply, the Deffenbaughs assert that the record contained substantial evidence of constructive notice. This argument was not raised in their opening brief and therefore has been forfeited. As the Supreme Court has observed, "[i]t is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party." (*People v. Tully* (2012) 54 Cal.4th 952, 1075.) In any event, far from presenting evidence that Watson had constructive notice of prior prescriptive easements, the Deffenbaughs merely assert that Watson did not inspect many areas where the Deffenbaughs assert that there were easements without showing that, had Watson done so, he would have discovered the easements. The Deffenbaughs also assert that Watson saw Farinella parking in the Upper Turn-Around Area, but they do not explain how that provided notice of any previously existing prescriptive easements.

The Deffenbaughs contend as well that the trial court excluded testimony concerning prior activities because it mistakenly believed that a prescriptive easement must be based on use in the five years immediately prior to commencement of the action. In support of this contention, the Deffenbaughs point to the trial court's initial observations about the evidence that it found relevant as well as later comments about laches and the statute of limitations. The Deffenbaughs are correct that the trial court made some questionable initial comments suggesting that only actions within five years of the filing of suit were relevant, and the court's later comments about laches and the statute of limitations are questionable as well. However, after the Deffenbaughs referred the court to the *Zimmer* case, the trial court expressly recognized that use prior to a property owners' purchase—and, thus, prior to commencement of this action—may be relevant if "the burdened property owner had actual or constructive knowledge." Moreover, "it is a fundamental principle of appellate procedure that a trial court judgment

13

is ordinarily presumed to be correct and the burden is on an appellant to demonstrate . . . that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Accordingly, rather than assuming that the trial court adopted a categorical rule against consideration of prior use and pre-existing prescriptive easements, we assume that the trial court applied settled principles of law concerning prescriptive easements and simply required the Deffenbaughs to establish a foundation of notice, and the court excluded testimony from the Deffenbaughs' witnesses because they failed to establish such a foundation.

Accordingly, the trial court did not abuse its discretion in excluding testimony about use before Watson purchased the Watson/Chang property in 2012.

### 3. *Post-Motion Testimony*

After Church moved for judgment under Code of Civil Procedure section 631.8, and the trial court announced its tentative decision to grant the motion, the Deffenbaughs asked to present additional testimony from two witnesses (Farinella and Bob Watson) who already had testified and a third witness (Kurt Hibner) whose testimony had been excluded. Although the trial court recognized the general right to present additional evidence in response to a motion under Code of Civil Procedure section 631.8, the court ruled that "[i]t is not permissible to just bring in the same witnesses again and hope that you get a different set of answers than the evidence that the Court already heard." The Deffenbaughs contend that this ruling was erroneous. We are not persuaded.

The Deffenbaughs do not assert that they would have presented testimony materially different from the testimony already given during the nine days of testimony that they had presented. Nor do the Deffenbaughs argue that the trial court was required to permit them to present duplicative testimony. Instead, they assert that additional testimony would have given the trial court another opportunity to "observe[] the witnesses' demeanor" and to elicit unspecified evidence "about the context surrounding their relevant testimony." However, they fail to offer any reason why Code of Civil

14

Procedure section 631.8 compelled the trial court to permit such testimony. While that section states that a party defending against a motion for judgment brought at the close of the plaintiffs' case "shall have an opportunity to present *additional* evidence" (Code Civ. Proc., § 631.8, subd. (a), italics added), nothing in this section suggests that trial court must permit testimony duplicative of testimony already presented, and the Deffenbaughs have not shown that they were prevented from offering any meaningfully different testimony.

### 4. The Church Easement

The Deffenbaughs also contend that the trial court erred in ruling that Farinella's use of the Upper Turn-Around Area before McEwen's death in 2014 was a neighborly accommodation rather than an adverse use, arguing that Church's easement prevented McEwen from authorizing such use. As the Deffenbaughs did not make this argument in the trial court, it has been forfeited. (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548 (*Hewlett-Packard*); [" ' "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal . . . ." ' "]; *Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 670 (*Sander*) [" 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal.' "].)

### 5. The Easements Unrelated to Church

The Deffenbaughs argue that they were prevented from providing testimony concerning the alleged prescriptive easements considered in the second phase of the bench trial because, during that phase, the trial court excluded evidence concerning use before Watson's purchase for the same improper reason that it did during the first phase. As we have concluded that there was no abuse of discretion in excluding such evidence in the first phase of the trial, we reject this argument.

In sum, we conclude that there was no reversible error in connection with the trial court's rejection of the Deffenbaughs' prescriptive easement claims.

15

**B. The Pool Easement**

In addition to rejecting the Deffenbaughs' prescriptive easement claims, the trial court ruled that the express pool easement granted to the Deffenbaughs' predecessor did not permit them to convert the old tool shed in the pool area into office space, to pave the area, to build the storage shed, or to build the garage. The Deffenbaughs contend that this ruling was erroneous because the structures and the paving are "appurtenances" under the pool easement. Here again, we disagree. As the trial court recognized, the pool easement is limited to appurtenances that are pool-related.

In construing express easements, courts follow the rules for construing contracts and deeds. (See *Sarale v. Pacific Gas & Electric Co.* (2010) 189 Cal.App.4th 225, 245 (*Sarale*); see also Civ. Code, § 1066 ["Grants are to be interpreted in like manner with contracts in general, except so far as is otherwise provided in this Article."]. Consequently, an easement " ' "must be construed by a consideration of its own terms" ' " (*Sarale*, at p. 245), and where those terms are clear, they are " ' "decisive of the limits of the easement" ' " (*Van Klompenburg v. Berghold* (2005) 126 Cal.App.4th 345, 350). If the language of an express easement is not plain, courts apply rules of contract and grant construction, including the rule that "[a] grant is to be interpreted in favor of the grantee . . . ." (Civ. Code, § 1069.). However, "[i]n interpreting a deed, our primary objective is to determine and carry out the intent of the parties." (*Pear v. City and County of San Francisco* (2021) 67 Cal.App.5th 61, 70.) Consequently, the rule that grants should be interpreted in favor of the grantee " ' "must be considered in connection with other provisions of the code in reference to interpretations, the most prominent of which is that all interpretations should be directed toward the ascertainment of the true intent of the parties." ' " (*Id.* at p. 73.)

Applying these principles, we conclude that the pool easements cover only appurtenances that are pool-related. The pool easement granted the Deffenbaughs' predecessor an exclusive easement over a specified portion of the Watson/Chang

property "for the installation, use, maintenance and repair of a swimming pool, pool deck, pool equipment and appurtenances and for other customary and usual related purposes." As the Deffenbaughs recognize, an appurtenance is "[s]omething that belongs or is attached to something else." (Black's Law Dict. (12th ed. 2024), p. 126, col. 2; see also *Trask v. Moore* (1944) 24 Cal.2d 365, 368 ["Appurtenances are things belonging to another thing as principal and which pass as incident to the principal thing."].) Because the pool easement provides for the "use, maintenance and repair of swimming pool," under the easement "appurtenances" are naturally understood to be things that belong or attach to the swimming pool—that is, pool-related items and structures.

Other than asserting that the garage was used for storing some pool chemicals and chairs, the Deffenbaughs do not contend that any of the structures at issue are pool-related. Instead, they assert that the text of the pool easement is unclear because, while it refers to a "swimming pool," "pool deck," and "pool equipment," the easement does not place the word "pool" immediately before "appurtenances." We are not persuaded by this analysis. The easement's failure to use the odd-sounding and potentially confusing term "pool appurtenances" is not surprising. Moreover, the Deffenbaughs fail to explain what the "appurtenances" might belong or attach to besides the swimming pool, much less why the grantor would have intended to give the Deffenbaughs' predecessor authority to build appurtenances unrelated to the swimming pool. In short, the Deffenbaughs fail to offer any plausible alternative interpretation of the pool easement.

The Deffenbaughs also assert that, even if the pool easement is limited to pool-related matters, the trial court should not have ordered them to remove the garage, the storage shed, the converted office, the concrete pad underneath it, and the paving in the pool easement area. Instead, the Deffenbaughs assert, the court should have restricted these structures to pool-related uses. This argument assumes that all the structures at issue are within the pool easement area and may be used for pool-related purposes, which is by no means clear. However, we need not resolve that issue. Although in the trial

17

court the Deffenbaughs opposed an injunction requiring them to remove the sheds, the garage, and the paving, they did not do so on the ground that they should be ordered to use those structures for pool-related uses. Consequently, here again, the Deffenbaughs' argument has been forfeited. (*Hewlett-Packard*, *supra*, 65 Cal.App.4th at p. 548; *Sander*, *supra*, 26 Cal.App.5th at p. 670.)

We therefore conclude that the trial court properly rejected the Deffenbaughs' claims concerning the pool easement and ordered appropriated relief.

## C. The Vacated Roadway

In addition to seeking to quiet title concerning the alleged prescriptive easements and the express pool easement, the Deffenbaughs sought to quiet title concerning ownership of a portion of the vacated roadway, which was dedicated to Los Gatos in 1972 for a public thoroughfare, but later vacated by the town. The trial court rejected the Deffenbaughs' claim of ownership, finding that they had "not met their burden to quiet title to any portion of the vacated roadway that lies on their land" as "no portion of the vacated roadway from the fork in the road to the Upper Turn Around Spot lies on Plaintiffs' land." The Deffenbaughs contend that this ruling is erroneous and that they should be declared owners of the part of the roadway that abuts their property.

In challenging the finding that they failed to satisfy their burden of proving ownership, the Deffenbaughs face a " ' "daunting burden." ' " (*Padideh v. Moradi* (2023) 89 Cal.App.5th 418, 438.) Factual findings are governed by the substantial evidence standard, and in applying that standard, appellate courts do " 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640.) Instead, appellate courts review the record " ' " 'in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor.' " ' " (*Carranza v. City of Los Angeles* (2025) 111 Cal.App.5th 388, 400.) Moreover, where, as here, the appellant bore the burden of proof on an issue, and the trial court found that the appellant failed to

18

satisfy its burden, the question on appeal is " 'whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) To demonstrate that evidence compels a finding, an appellant must show that the evidence was " '(1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Ibid*.)

The Deffenbaughs do not attempt to satisfy this burden. Instead, they contend that their ownership of the land in question is established by the plain language of the Los Gatos resolution vacating dedication of the roadway and a 1972 parcel map. As defendants point out, the Deffenbaughs did not make this argument below. The Deffenbaughs note that in the trial court they raised "the issue" of the vacated roadway. However, they are unable to point to any argument in the trial court about the plain meaning of the Los Gatos resolution and the parcel map. Accordingly, even though this argument raises a pure question of law, we deem it forfeited. (*Greenwich S.F. v. Wong* (2010) 190 Cal.App.4th 739, 767; see also *Hewlett-Packard*, *supra*, 65 Cal.App.4th at p. 548; *Sander*, *supra*, 26 Cal.App.5th at p. 670.))

In any event, the Deffenbaughs' plain language argument is meritless. The Deffenbaughs assert that "[t]he relevant city resolution described the right-of-way by reference to the 1972 parcel map" and "[t]hat map shows that the vacated right-of-way abuts Parcels 106 through 109." However, the Deffenbaughs fail to explain how the Los Gatos resolution references the 1972 parcel map or how that map shows that the portion of the vacated roadway at issue lies on their property. Nor is it plain from the documents. While the resolution contains an exhibit with a description of a roadway right-of-way which in turn references a parcel map, it is not clear that the 1972 parcel map is the one referenced by the resolution, though there are some handwritten numbers suggesting that it may be. Even more important, the Deffenbaughs fail to explain where on the 1972

19

parcel map the portion of the vacated roadway is located, much less how the map shows that the portion lies on their property.

Indeed, the resolution provides a series of coordinates that start at the "northeasterly corner" of a point on the parcel map and continue through other points on the map. The Deffenbaughs fail to explain how those coordinates track onto the 1972 parcel map or where the portion of the vacated roadway at issue is located on the map. As a consequence, they have not shown that under the plain language of the Los Gatos resolution and the 1972 parcel map the portion of the vacated roadway at issue lies on their property.

We therefore conclude that the Deffenbaughs' quiet title claim concerning the vacated roadway was properly denied.

### D. Compensatory Damages

We now turn to the issue of compensatory damages. A party prevailing on a trespass claim may seek damages based on "the value of the use of the property" during the trespass (Civ. Code, § 3334, subd. (a)), which in turn is measured by "the reasonable rental value" of the property or by "the benefits obtained by the person wrongfully occupying the property" (*id*., subd. (b)(1)). At trial, Chang and Watson presented evidence concerning both the rental value of the increased storage on the Deffenbaughs' properties resulting from the Deffenbaughs' trespasses and the rental rate increases imposed by the Deffenbaughs after the encroachment on their property. Crediting this evidence, the trial court awarded $85,000 in compensatory damages. Primarily challenging the evidence concerning the rental increases, the Deffenbaughs argue that the trial court's award was not supported by substantial evidence. We disagree. The trial court's award appears to have been based on the value of the increased storage space, and the amount awarded is supported by substantial evidence.

When a trial court's factual findings are challenged on appeal, "the appellate court's power begins and ends with a determination whether there is any substantial

20

evidence." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) " 'Substantial evidence' is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. [Citation] It is sufficient ' "if any reasonable trier of fact could have considered it reasonable, credible, and of solid value." ' " (*San Diego Unified School Dist. v. Commission on Professional Competence* (2013) 214 Cal.App.4th 1120, 1142; see *People v. Ramirez* (2022) 13 Cal.5th 997, 1117.) Moreover, while the amount of compensatory damages "must not be based on speculation" (*Adams v. Murakami* (1991) 54 Cal.3d 105, 114), a trial court only needs a " 'reasonable basis of computation of damages,' " and the amount awarded may be " 'an approximation.' " (*Tufeld Corporation v. Beverly Hills Gateway, L.P.* (2022) 86 Cal.App.5th 12, 32.)

The evidence presented by Watson and Chang provided a reasonable basis for calculating that they suffered at least $85,000 in damages from the Deffenbaughs' trespasses. Watson and Chang submitted into evidence a document showing advertisements for storage rates in Los Gatos. According to Watson's testimony, these documents showed that the average monthly rental price for local storage units was about $3.50 per square foot.

Based on that evidence, the trial court reasonably could have concluded that the rental value of the storage space created by the Deffenbaughs' trespasses was approximately $85,000. Exhibits presented at trial showed that the Deffenbaughs' encroachments created 80 square feet of storage space in the tool shed, 99 square feet in the prefabricated shed, and 200 square feet of the garage partially located on the pool easement. At $3.50 per square foot, the monthly rent for the storage space in these structures would be $280.00 (=80 sq. ft. x $3.50/sq. ft) for the tool shed, $346.50 (=99 sq. ft. x $3.50/sq. ft.) for the prefabricated shed, and $700 (=200 sq. ft x $3.50/sq. ft.) for the garage.

The trial court reasonably could have calculated the rental value of this storage to be at least $85,000 by the time its statement of decision was issued in June 2023. The

tool shed was on the Deffenbaughs' property when they purchased it in September 2016, the prefabricated shed was installed October 2017, and the garage was constructed in the summer of 2018. Accordingly, the value of the storage space added by the Deffenbaughs' trespasses was $22,680 (=81 months x $280/month) for the tool shed, $23,562 (=68 months x $346.50/month), and $40,600 (=58 months x $700/month)— which totals $86,842. As this is approximately the amount of compensatory damages awarded by the trial court, the court appears to have based its damages calculation on the value of the storage space created by the Deffenbaughs' trespasses and to have had a reasonable basis for doing so.

The Deffenbaughs assert that Watson "simply speculated that the rental value of the Barn's storage building was at least as much as commercial storage-unit space," and that this "amateur internet sleuthing" does not provide an adequate basis for the trial court's award. However, the Deffenbaughs fail to explain why it is not reasonable to use advertised prices for storage in an area to calculate the value of additional storage space there. Moreover, while they cite several cases finding evidence speculative, none of these cases deals with advertising or storage space. (See *St. Mary & St. John Coptic Orthodox Church v. SBC Insurance Services, Inc*. (2020) 57 Cal.App.5th 817; *Orange County Flood Control Dist. v. Sunny Credits Dairy, Inc*. (1978) 77 Cal.App.3d 742; *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634.) As a consequence, the Deffenbaughs have failed to show that the trial court's calculation of damages was either unsupported or unreasonable.

The Deffenbaughs also contend that the evidence concerning advertised prices used by Watson was improperly admitted because, among other things, it was hearsay. This contention is contradicted by recent authority recognizing that advertisements may be used to show the existence of an advertised price, a "nonhearsay purpose," and that "courts throughout the country have concluded that the price at which an item is advertised for sale in the retail marketplace . . . provides admissible evidence of fair

22

market value of the item." (*People v. Portillo* (2023) 91 Cal.App.5th 577, 592, 601.) While the Deffenbaughs argue that this authority is inapplicable, we need not resolve the issue because the Deffenbaughs forfeited their hearsay argument. As a general rule, "[i]ssues not raised in the appellants' opening brief are deemed waived or abandoned." (*W.S. v. S.T.* (2018) 20 Cal.App.5th 132, 149, fn. 7.) The Deffenbaughs argue that their opening brief's assertion that Watson's valuation testimony should have been excluded "encompassed the hearsay issue." But the opening brief said only that the trial court "should have sustained the objections to that testimony as lacking foundation and requiring expert opinion." It did not mention hearsay, and neither respondents nor this court were required to speculate what the Deffenbaughs' statements "encompassed." (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [Appellate courts "are not bound to develop appellants' arguments for them."].) Indeed, because the Deffenbaughs offered no legal analysis or authority in support for their assertion that Watson's testimony lacked foundation or required expert opinion, even those issues were not properly raised. (See, e.g., *S.C.*, *supra*, 138 Cal.App.4th at p. 408 ["When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' "].) The Deffenbaughs' supplemental briefing, which raises new arguments to which Watson and Chang have not had an opportunity to respond, does not remedy this problem.

We therefore uphold the trial court's compensatory damages award.

### E. Punitive Damages

In addition to awarding compensatory damages, the trial court awarded $765,000 in punitive damages. The Deffenbaughs do not dispute that the trial court had adequate evidence of malice to support punitive damages. Nor do they challenge the amount of the award. Instead, the Deffenbaughs contend that the trial court abused its discretion in allowing Watson and Chang at the close of evidence in the second phase of the trial to

23

amend their claims to conform to proof and add a punitive damages request to their trespass claim.  As explained below, we find no abuse.

Under the Code of Civil Procedure, a judge may allow the pleadings to be amended "at any time before or after commencement of trial, in the furtherance of justice" (Code Civ. Proc., § 576), and a variance between pleading and proof is not deemed material "unless it has actually misled the adverse party to his or her prejudice" (*id*., § 469).  Application of these provisions, and allowance of amendments to conform to the proof, " 'rests largely in the discretion of the trial court.' " (*McMillin v. Eare* (2021) 70 Cal.App.5th 893, 909.)  Moreover, as the Supreme Court recognized long ago, "amendments to conform to proof . . . have been allowed with great liberality, 'and no abuse of discretion is shown *unless by permitting the amendment new and substantially different issues are introduced in the case or the rights of the adverse party prejudiced.*' " (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31.)  Accordingly, courts routinely allow amendments to conform to proof at trial.  (See, e.g., *Pellegrini v. Weiss* (2008) 165 Cal.App.4th 515, 527-528; *Norager v. Nakamura* (1996) 42 Cal.App.4th 1817, 1819; *Nelson v. Grant* (1981) 125 Cal.App.3d 623, 636-637; *Rieger v. Rich* (1958) 163 Cal.App.2d 651, 666.)

The trial court did not abuse its discretion in allowing an amendment in this case. The amendment here did not introduce new and substantially different issues.  In their cross-complaint, Watson and Chang sought punitive damages under Penal Code section 605 based on the malicious removal of survey stakes marking the boundary of the Deffenbaughs' property.  Accordingly, when Watson and Chang asked to amend their cross-complaint to add a punitive damage request to their trespass claim, the court observed that Mr. Deffenbaugh's motivation already had been the subject of deposition and discovery and that there had been considerable testimony at trial concerning the interactions between the parties and their motivations.  The trial court therefore reasonably concluded that addition of a punitive damages request to the trespass claim

24

would not prejudice the Deffenbaughs, and, in any event, it granted them the opportunity to present additional evidence concerning Mr. Deffenbaugh's motivation and whether he acted with malice, oppression, or fraud.

Although the Deffenbaughs dispute the trial court's conclusion, they fall far short of showing an abuse of discretion. For example, the Deffenbaughs assert that amendment of the trespass claim introduced into the case the issue of why Mr. Deffenbaugh trespassed. But, as noted above, the trial court observed that the Mr. Deffenbaugh's motivations were already the subject of both discovery and testimony at trial, and the Deffenbaughs do not dispute this observation. Instead, they assert—without any citation to the record—that these findings are "not persuasive" because Mr. Deffenbaugh's motive "was not really at issue" before the amendment because Penal Code section 605 "does not create a private right of action" and also because Mr. Deffenbaugh's motive in trespassing was "a broader and different issue than his motive in moving the stake." While these arguments are not implausible, the trial court plainly viewed the record differently, and the Deffenbaughs fail to explain why the trial court abused its discretion in doing so.

The Deffenbaughs also assert that they were prejudiced by the amendment because they would have litigated their case differently had they known that Watson and Chang were seeking punitive damages for trespass as well as for violating Penal Code section 605. In particular, the Deffenbaughs assert that they would have conducted "further discovery about Watson and Chang's bad conduct" and "presented additional evidence about how [Mr. Deffenbaugh] came to believe he had a prescriptive easements" and the bad conduct of Watson and Chang. However, the Deffenbaughs do not explain why they did not develop and present such evidence in response to the punitive damages request under the Penal Code section 605 claim. Moreover, other than alluding to an

25

unsuccessful civil harassment claim brought by Chang,[2] the Deffenbaughs fail to identify what different evidence they would have presented or discovery they would have sought. The Deffenbaughs also assert that the amendment exposed them to greater damages and would have made them "more seriously consider settlement." However, they do not assert that in fact they would have settled or even attempted to settle. Consequently, here again, the Deffenbaughs fail to show that the trial court abused its discretion in granting leave to amend.

In asserting that the trial court abused its discretion, the Deffenbaughs rely heavily on *Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359 (*Duchrow*). However, *Duchrow* is clearly distinguishable. In that case, a lawyer sued a former client for breaching a retainer agreement and sought damages under the contract's contingency provision. (*Id*. at p. 1362.) At trial, the plaintiff was granted leave to amend his complaint to seek damages under a provision in the retainer agreement allowing him to withdraw for good cause and recover fees for all time spent. (*Id*. at pp. 1362-1363.) *Duchrow* ruled that the trial court had abused its discretion because the amendment changed the breach claimed by the plaintiff and introduced entirely new issues such as whether defendant engaged in wrongdoing that may have provided good cause for withdrawal. (*Id*. at p. 1380.) In addition, the defendant was prejudiced because changing the fees claimed from contingent to hourly at trial deprived her of the opportunity to conduct discovery into the hours actually worked by the plaintiff, to retain an expert on the reasonableness of the fees, or to conduct legal research into the enforceability of the withdrawal provision. (*Id*. at pp. 1381-1382.) The Deffenbaughs suffered no such prejudice here.

---

[2] Because the order denying the request for a civil restraining order is the record of a court in this state, the Deffenbaughs' request to take judicial notice of the order is granted. (See Evid., Code, § 452, subd. (d)(1).) The Deffenbaughs' motion to augment the record with the exhibit transmittal notice in the trial court, which has been deemed a request for judicial notice, is denied because the notice is not relevant. The motion to strike the reply appendix submitted by the Deffenbaughs is also denied.

The two other cases cited by the Deffenbaughs are similarly inapposite. In one, a trial court permitted the plaintiff to change a claim for a constructive trust into a fiduciary duty claim. (*McMillin v. Earle* (2021) 70 Cal.App.5th 693, 908.) The Court of Appeal found an abuse of discretion because this amendment introduced entirely new issues such as the existence of a fiduciary relationship and the defendant was deprived of an opportunity to develop or present evidence about those issues. (*Id*. at pp. 910-914.) In the other case, a juvenile court permitted an amendment to a dependency petition, not an amendment to conform to proof. (*In re I.S.* (2021) 67 Cal.App.5th 918.) In short, none of the cases cited by the Deffenbaughs provides persuasive authority for finding an abuse of discretion in this case.

We therefore conclude that the trial court did not abuse its discretion in granting Watson and Chang leave to amend to conform to proof and add a punitive damages request to their trespass claim.

## III. DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

27

_____
BROMBERG, J.

WE CONCUR:

_____
GREENWOOD, P. J.

_____
DANNER, J.

*Deffenbaugh et al. v. Change et al.*
H051820